## CHARLES ALTENBRUN and Minnie Altenbrun, Appellants, v. FIRST NATIONAL BANK OF ROCK LAKE, a Corporation, Nels W. Hawkinson, and W. J. Lichty, Respondents.

### (181 N. W. 590, 908.)

**Mortgages — intent of parties controlling in determining whether deed is a mortgage.**

1. In considering whether a deed was executed for purposes of a sale, or for purposes of security, and therefore a mortgage, the essential thing in equity is to determine the real intention of the parties.

**Mortgages — surrounding circumstances admissible in determining whether deed a mortgage.**

2. In ascertaining such intention, equity will regard the substance rather than the form, and, presuming that all parties intended to act in good faith, will view all of the surrounding circumstances.

**Mortgages — absolute deed proved a mortgage only by clear evidence.**

3. Although this intention must be disclosed by clear, convincing, and satisfactory evidence, in order to overcome the presumption accorded to a solemn deed, absolute on its face, nevertheless, if such intention be so shown by a consideration of the substance of the transaction, its form then becomes immaterial.

**Mortgages — deed with option contract and crop lease held a mortgage.**

4. Where a deed, absolute on its face, was made for 480 acres of land, and, in connection therewith, an option contract for the sale of the land and a crop lease were made to the grantor, it is *held*, for reasons stated in the opinion, that the deed was made for purposes of security and, therefore, in equity was a mortgage.

Opinion filed January 28, 1921.

Action in District Court, Towner County, *Burr*, J., to declare a deed a mortgage.

Plaintiffs have appealed and demand a trial *de novo.*

Reversed.

*G. Grimson* and *J. M. Snowfield* (*William Lemke*, of counsel), for appellants.

---

NOTE.—On the question of admissibility of parol evidence that a written instrument which, on its face, imports a complete transfer of a legal or equitable title or interest in property was intended as a mortgage, see comprehensive note in L.R.A. 1916B, 18.

"Where a deed of land absolute on its face is accompanied by an instrument of defeasance providing for the reconveyance of the property to the grantor, or the revesting of title in him, on his paying a debt or performing some other act intended to be secured, the two instruments will be taken together to constitute a mortgage." 27 Cyc. 994; 18 Ala. 501; 2 Root (Conn.) 279; 21 D. C. 24; 23 Ind. 51; (Ky.) 24 S. W. 629; 13 Ark. 112.

The truest test of whether the transaction is a mortgage or not is the intention of the parties at the time the deal was made, and an absolute deed may be shown to have been nothing more than a mortgage. Jasper v. Hazen, 4 N. D. 1; McGuin v. Lee, 10 N. D. 160; Forester v. Van Auken, 12 N. D. 175; Little v. Baun, 11 N. D. 410; Miller v. Smith, 20 N. D. 96.

"Retention of grantor's notes would be a strong circumstance to establish the transaction of a mortgage." Pitts v. Cable, 46 Ill. 103, 44 Ill. 103; Ennor v. Thompson, 46 Ill. 214; Fielder v. Darrin, 50 N. Y. 437; Murphy v. Darst, 9 N. E. 343.

The fact that the grantor became a tenant of the grantee, and paid rent, was held not to be inconsistent with the character of the mortgagor and mortgagee. Marshall v. Steel, Russ. Eq. (Nova Scotia) 116; Haggerty v. Brower, 75 N. W. 320; Roger v. Davis, 59 N. W. 265; Wilson v. McWilliams (S. D.) 91 N. W. 453.

*Flynn, Traynor, & Traynor,* for respondents.

Inasmuch as the contract, exhibit 2, gives Altenbrun no authority or right to purchase the land himself, therefore under the law he could not become a purchaser and there is no agreement to reconvey. For authorities on this point see the following: 31 Cyc. 1437; 20 L.R.A. (N.S.) 1158, note; Durand v. Preston (S. D.) 128 N. W. 129; Merriam v. Johnson (Minn.) 90 N. W. 116; Curran v. Kent (S. D.) 153 N. W. 142; Sawyer v. Issenhuth (S. D.) 141 N. W. 378; Robbins v. Maher, 14 N. D. 228, 103 N. W. 755.

The conveyance was not a mortgage. Elling v. Fine (Mont.) 164 Pac. 891; Greff v. Hobbs (Iowa) 159 N. W. 429; City Lumber Co. v. Hollands (Mich.) 148 N. W. 361; Gogarn v. Connors (Mich.) 153 N. W. 1068; Lamberson v. Bashore (Cal.) 139 Pac. 817; Devore v. Woodruff, 1 N. D. 143; McGuinn v. Lee, 10 N. D. 160; Miller v. Smith, 20 N. D. 96; Forester v. Van Auken, 12 N. D. 175; Little v.

Braun, 11 N. D. 410; Northwestern F. & M. Ins. Co. v. Lough, 13 N. D. 601.

The question whether a deed which is absolute in form is to be taken as a mortgage depends upon the intention of the parties in regard to it at the time of its execution. 27 Cyc. 1007.

To convert the instrument into a mortgage there must be a continuing, binding debt, in its fullest sense. Miller v. Smith, 20 N. D. 102; 27 Cyc. 1010.

ROBINSON, Ch. J. From the beginning to the end, the transactions narrated in this case bear marks of indirection, windings, and subterfuge. On January 25, 1917, for the express consideration of $1, the plaintiffs made to Hawkinson and Lichty, officers of the bank, a warranty deed for 480 acres of good land in town 122, ranges 65 and 66. The grantees quitclaimed the land to the bank. The plaintiffs continued their residence on the land, farming it, and giving to the bank a large part of the annual crops and returns. Now the plaintiffs claim that the deed is in fact a mortgage to secure the bank for debts and advances. They ask that the bank account and give them a true statement of all debts, advances, and moneys received from the plaintiffs and the crops; that the court determine the amount due and adjudge the deed to be a mortgage. Defendants, by answer, claim that the deed was an actual bona fide sale of the land, and not a mortgage. Plaintiffs appeal from a judgment against them.

Now the turning facts of the case are these. The plaintiffs owned the land. They had resided on it for some twenty years, and naturally by such long residence they had become attached to the land and set on it a price of affection. They owed the bank on chattel security about $2,000, and, on a second mortgage, $1,000. They owed each defendant named in the deed about $100. No other securities had become due except some interest on a mortgage to McLaughlin. The amount secured on the land was $12,000, more or less. The bankers represented to plaintiffs that McLaughlin was about to foreclose and to make a ruinous expense, and that to avoid the same it was necessary to deed the land to the bank. Confiding in their bankers, the plaintiffs acquiesced. Accordingly the bankers prepared the deed in question, took it to the farm, and obtained the signatures of plaintiffs. Then the plaintiffs

were induced to take a cropping lease of the land, signed by Lichty and Hawkinson, and they made to the plaintiffs a contract authorizing them, within one year, to sell the land for any sum in excess of $12,400, and to retain the excess. During the deal the bankers continuously protested and assured the plaintiffs that they did not want the land, and that all they wanted was the money due. Neither at the time of the making of the deed, nor at any time until two days before the commencement of this action, did the defendants, or either of them, return, release, or offer to surrender to the plaintiffs any of the notes and mortgages held against the land. In other words, the plaintiffs made the deed without a particle of consideration, except an oral understanding that they would be protected against foreclosures. The record contains not a word of evidence to show that the plaintiffs ever bargained to sell the land.

Mr. Foley, the bank manager, testifies:

Q. There was not any talk of the bank buying the land out and out?
A. No, not definitely.
Q. Was he offering to sell the land?
A. No, sir; not exactly.
Q. Your idea was to save expense of foreclosure?
A. Yes, sir.
Q. You were interested because you had a subsequent mortgage?
A. Yes, sir.

In October, 1919, two days before the commencement of this action, he figured the amount against the land at $12,241.68. Then he made a pretended sale of the land to Mr. Langley and Mr. Hall for the price of $31 an acre. That included a commission of $3 an acre.

Question to Mr. Foley:

Q. The land was sold to Mr. Langley and Mr. Hall?
A. Yes, sir.
Q. Mr. Langley is a brother of your cashier?
A. Yes, sir.
Q. He is also your agent for the sale of the land?
A. Yes.
Q. In fact, all he has paid down is the commission?
A. Yes, sir.

Q. He had not put one cent of money into it?

A. No, sir.

And that is how they tried to save the expense of foreclosure! It is needless to extend the discussion. The record shows conclusively and beyond all doubt that the plaintiffs did not bargain to sell the land to the defendants or either of them, and that the deed in question was made as a security for past and future advances necessary to save the expense of foreclosure. Such a deed is a mortgage. Sherwin v. American Loan & Invest. Co. 42 N. D. 389, 173 N. W. 758.

Every transfer of an interest in land, other than in trust, made only as security for the performance of an act, is to be deemed a mortgage. Comp. Laws, § 6727.

The judgment must be reversed and the case remanded to the District Court for further proceedings.

GRACE, J., concurs.

BRONSON, J. (concurring specially). The crucial question in this case is to determine whether the deed was executed upon a sale made, or, for purposes of security. As stated in Sherwin v. American Loan & Invest. Co. 42 N. D. 389, 173 N. W. 760, in transactions of this kind, the essential thing, in equity, is to determine the real intention of the parties. In so doing, equity, presuming that all parties intended to act in good faith, will view all of the surrounding circumstances in order to determine this real legal intention of the parties. In ascertaining such intention room is afforded for the application of the maxim that equity regards the substance rather than the form. Although the intention of the parties must be disclosed by clear, convincing, and satisfactory testimony in order to overcome the presumption accorded to a solemn deed absolute on its face, nevertheless, if such intention is so shown by a consideration of the substance of the transaction, its form then becomes immaterial.

This is a case involving not fraud of the parties, but rather the question of determining their real legal intentions upon the transaction had. Ofttimes it is by indirections that we find directions out. A careful survey of the testimony in this case discloses that the plaintiff never had any real legal intention to sell the land involved through the deed

executed; that the bank, furthermore, took this deed not because it wanted to buy the land, but because of the financial embarrassment in which the plaintiff was found. Throughout the testimony the bank continuously asserted an intent that it wanted only its money due it from the plaintiff upon both its real estate and chattel securities. That it caused this deed to be made in order to save the plaintiff from the expenses of a foreclosure, and, further, in order that it might secure to itself the money due. At the time the deed was executed, the plaintiff was delinquent in interest payments upon existing real estate mortgages; he was then seeking without avail to place a loan through Federal land agencies upon the land, and the bank then was in a position, by reason of its inferior real estate securities, where it was required, in order to preserve its lien, to assume, or to make arrangements to take care of, prior liens upon the premises affected. The foreclosure of these prior liens would lessen the security of the bank by reason of the expenses involved. At the time when the deed was executed, there was no stated consideration computed as the value of the land, and for which a stated amount should be paid by the bank as a consideration for the sale. In this regard, the evidence in favor of the bank, in any event, amounts only to a showing that the land involved was not worth any more than the indebtedness secured against it, and that consequently such indebtedness represented the consideration for the value of the land.

This statement, as computed by the bank, gave an aggregate sum of $14,450.19. It included principal and interest secured by liens prior to the bank's mortgage, also taxes and unsecured claims of one Hawkinson for $38.15, and of the Lichty Merc. Company for $150.85. Hawkinson and Lichty were grantees in the deed made by the plaintiff, and were officers of the bank. The indebtedness owing by the plaintiff to the bank, as computed by the bank, then amounted to $6,018.94. It was secured by a mortgage upon the land involved and also a mortgage upon plaintiff's chattels. In this regard it is to be noted that the bank, in this transaction, proceeded first to consider the security of both plaintiff's real estate and chattels; it then made an apportionment of this indebtedness, allotting $12,241.64 upon the land, and the balance, $2,019.60, upon the chattels. This, accordingly, divided the indebtedness owing by the plaintiff to the bank, a portion thereof upon the land

and the balance as stated, secured by chattel mortgages already existing. At this time neither a new note nor new chattel mortgage was taken by the bank, but all of the outstanding notes, together with the chattel mortgages executed in securing thereof, were held by the bank, as it claims, as collateral to the payment of this indebtedness then resulting and existing upon the chattel security. It is evident that, as a result of this transaction, the security of the bank was strengthened through giving to it a larger measure of title and an equitable lien upon the land, as well as upon plaintiff's chattels so mortgaged, including, further, the theretofore unsecured claims of Hawkinson and the Lichty Merc. Company. It gave to the bank the opportunity to negotiate concerning the prior liens, to have a measure of direction in the farming operations of the land concerned, and to receive an application yearly of the crop proceeds, thus better insuring payment and reduction of its indebtedness. It is evident further, from the record, that at the time of this transaction the plaintiff was not relieved or released by express acts of the parties concerning any of the indebtedness then owing by him to the bank; no note was canceled; no mortgage was released. The claim of the bank that this indebtedness was held as collateral by reason of its connection with the chattel security, and in order that it might preserve the status of such chattel security, and its lien thereupon, does not answer the fact that the transaction in its legal essence still remained a continued indebtedness on the part of the plaintiff towards the bank for the full amount existing prior to the execution of the deed.

The earmarks of the transaction indicate, further, the real thought of the parties; namely, that the bank should be better secured, and the plaintiff should be better afforded an opportunity to try and work out from his financial embarrassment. The execution of the option contract, practically simultaneously given, by two of the officers of the bank in whose name the title to the land was taken, evidences further an indication to give to the plaintiff and to preserve to him his equity in the land over and above the indebtedness owing by the plaintiff and secured thereon. This negatives an intent to secure, through the execution of a deed, the equity of redemption possessed by the plaintiff. The fact that leases were executed from year to year by the officers and the bank to this plaintiff upon this land did not serve to foreclose this equity

of redemption possessed by the plaintiff, or, in connection with the execution of the deed, to evidence a direct sale of the premises. It rather served to disclose a legal intent on the part of the bank to secure the largest measure of control possible in order to preserve to the bank better opportunity for realizing upon its indebtedness, and still permit to the plaintiff full opportunity to make redemption and relieve himself from financial embarrassment. This real legal intent of the parties is further shown by a letter written by the cashier of the bank nearly a year after the execution of this deed, wherein it was stated: "We paid McLaughlin the $1,800 second mortgage, and renewed the $3,200 deed, so you will not have to make a loan with the Federal Bank, now that we are taking the land over." Assuredly, this statement made by the cashier of a bank in a letter, in connection with a statement containing crop report and crop division for the year 1917, discloses affirmatively a legal intent on the part of the bank to recognize an interest and a right on the part of the plaintiff in the land involved. Manifestly, if a sale of the premises had been made, in fact, at the time of the execution of the deed and the lease, no such statement would have been made by the bank cashier in such letter. Furthermore, if the transaction was, at the time of the execution of the deed, a transaction for purposes of security, it so continued to remain. It is further to be noted that the sale by the bank in September, 1919, of these premises pursuant to a farm contract, was upon a consideration of $31 per acre, to be paid through one promissory note of $1,500 and another promissory note of over $14,000, payable by one half of the crops raised each year on such premises, with interest at 6 per cent per annum. In this transaction, the evidence discloses that a commission of $3 per acre was allowed, and was to be paid to the cashier of the bank, and that the bank's security then was sought to be changed from an indebtedness on the part of the plaintiff that paid them about 10 per cent per annum, with direct control over the crop proceeds each year, into a form of indebtedness that drew only 6 per cent per annum, and an agreement to turn over one half the crops until such indebtedness was paid. The good faith of such transaction might well be questioned if the best interests of the bank were being considered. Upon a careful survey of the entire record, and for the best in-

47 N. D.—18.

terests of both the plaintiff and the bank, upon principles of equitable consideration, we are of the opinion that this transaction was and should be deemed a transaction for purposes of security, and therefore a mortgage.

It is accordingly ordered that the judgment be reversed and remanded to the trial court, for further proceedings according to law, pursuant to this opinion, with costs to the appellant.

BIRDZELL, J., concurs.

CHRISTIANSON, J. (concurring). A careful consideration of the evidence in this case leads me to the conclusion that so far as the plaintiffs are concerned they had no intention to actually sell and transfer title to the land in controversy, either to Hawkinson and Lichty or to the bank. The evidence shows that the deed was executed by the plaintiffs at their farm. The deed was presented to them for execution by the cashier of the defendant bank, who was accompanied by the assistant cashier. Hawkinson, the president of the bank, testified that before the cashier and the assistant cashier went out to the plaintiff's farm, he instructed them specifically that they must make the Altenbruns understand that they were in fact selling the land. I am satisfied, however, that when the Altenbruns signed the deed they had no intention sell, and did not understand that they were actually selling, the land; but supposed that the deed was necessary, or at least desirable, as further protection to the bank, to secure its claims, and to enable it to take care of, and avoid foreclosure upon, the prior mortgages against the land. In other words, I am of the opinion that, regardless of what intentions the defendants may have had, the evidence shows that the Altenbruns intended to and did execute the deed for purposes of security only.