[File No. 7301]

ROBERT B. MECHTLE, Appellant, v. FORREST TOPP, Respondent.

(52 NW2d 842)

Opinion filed April 8, 1952

*F, E, Foughty* and *Melvin Christianson,* for appellant,

792

*Edgar P. Mattson,* for respondent.

MORRIS, C.J.   This is an appeal by the plaintiff from a judgment determining that the defendant is the owner of the fee simple title to certain lands in Eddy County free of any right, title, interest in, lien, or encumbrance upon the same by the plaintiff, Mechtle.

For some time prior to 1950 the plaintiff was the owner of the tracts of land involved in this suit containing approximately 1200 acres.  A mortgage on this property was foreclosed in 1949, and at the foreclosure sale on July 18 of that year, one James Casey became the purchaser and a sheriff's certificate of sale was on that date issued to him.  Under the terms of that

certificate Casey was entitled to a sheriff's deed at the expiration of one year from the date of sale unless redemption was made in the meantime. (Chapter 28–24 NDRC 1943) The plaintiff and the defendant had been neighboring farmers, but after the foreclosure sale the plaintiff moved to the city of New Rockford. About a week before the period of redemption expired, the plaintiff saw the defendant in town and asked the defendant to purchase the property. The defendant told him that he was not interested.

On the last day of redemption, July 18, 1950, the plaintiff drove out to the defendant's farm, where a discussion was had which resulted in the transaction now in litigation. From the defendant's farm the parties drove by separate conveyances to New Rockford, where further negotiations were had. They made two calls at a lawyer's office and one call at the sheriff's office. The sequence of these events is not clear from the record, but before the day was over the defendant wrote out his check payable to the sheriff for $3853.80, the amount required to redeem the land, and a certificate of redemption was issued by the sheriff in the name of Robert B. Mechtle. The same afternoon that the redemption was made the plaintiff executed and delivered to the defendant a quitclaim deed to the land, and at the same time the parties entered into a written agreement which is as follows:

"This agreement made and entered into this 18th day of July, 1950, by and between Forrest Topp, of Brantford, No. Dak., party of the first part, and R. B. Mechtle, of New Rockford, No. Dak., party of the second part.

"Witnesseth, that whereas the said party of the first part has this day paid to the said party of the second part, sufficient funds to make redemption from mortgage foreclosure, of the following described real property, situated in the County of Eddy and State of North Dakota, and described as follows, to-wit: The SW¼ of Section 2; The NW¼, the W½NE¼ and SE¼ of Section 11, The NE¼ of Section 15, The N½ and N½S½ of Section 14, all in Township 148 N. Range 64 West of the 5th P. M. and such redemption has now been made by the party of the second part, and

"Whereas the said party of the second part has this day executed and delivered to the said party of the first part, a quit claim deed to the said above described real property.

"Now therefore, in consideration of the premises it is understood and agreed, as follows, to-wit:

"That in addition to the amount advanced to second party by first party to make such redemption, the said party of the first part will also advance sufficient funds to pay the 1947 and 1949 taxes on said property; that the said party of the first part will hold the title to the said property for a period of four months from the date hereof, in trust for the second party, during which period of time the second party will have the option to sell the said property or a part thereof sufficient to repay the first party for the advances that he has made; that in the event the said property is not sold within the said four months period, or the second party does not repay first party for his advances so made, then and in that event the party of the first part is to have the whole title to said property, in fee simple and without any further claim thereon by the second party, and title shall be absolute in first party.

"It is further understood and agreed by and between the parties hereto that if said property is not sold within two weeks from the date hereof, the first party shall have the right to lease out said premises or to go upon said land himself for the purpose of summer fallowing the crop land thereon, and any lease he might make therefore, or for any part thereof, shall be binding on second party, if the same is redeemed by him, or sold, and shall be binding on any subsequent purchaser, that is to say the tenant under any such lease shall have the right to farm the said land for the season of 1951, in order to receive the benefit of any summer fallowing, or shall receive payment for said summer fallowing at a reasonable going price for the work he might do thereon.

"Party of the first part shall have the right to lease out the hay land on said premises, any time after July 23rd 1950, and if so leased the landlord's share of the hay crop shall be divided 50–50 between the parties hereto.

"In witness whereof the parties have hereunto set their hands the day and year first above written."

We will consider applicable statutes and pertinent rules of law to which we look for guidance in order to determine whether the transaction was one of security or whether it resulted in the transfer of absolute title to the defendant Topp. Section 35–0203 NDRC 1943 provides that: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is a mortgage, except that a transfer of personal property accompanied by an actual change of possession, is a pledge."

And the next section (35–0204) says: "The fact that a transfer was made subject to a defeasance on a condition, although not appearing by the terms of the instrument, may be proved, except as against a subsequent purchaser or encumbrancer for value and without notice, for the purpose of showing such transfer to be a mortgage."

In this state a mortgage conveys no title to or estate in the property covered by the mortgage, but is merely a contract by which specific property is hypothecated as security for the performance of an act. Section 35–0201 NDRC 1943; Federal Farm Mortgage Corp. v. Berzel, 69 ND 760, 291 NW 550; First National Bank of Waseca v. Paulson, 69 ND 512, 288 NW 465; State v. Divide County, 68 ND 708, 283 NW 184.

In view of the fact that the agreement provides that the defendant is to hold the property for a certain period of time "in trust," it is appropriate to here point out the distinction between mortgages of real property and trusts in real property. The latter are provided for by Chapter 59–03 NDRC 1943. As a general rule an express trust in real property vests the whole estate in the trustee, subject to the execution of the trust (Section 59–0314 NDRC 1943) while a mortgage creates no estate in the mortgagee. The distinction is well stated in Scott on Trusts, Section 9, from which we quote:

"The interest of a mortgagee is a security interest. He holds this interest for his own benefit and not for the benefit of the mortgagor. A trustee, on the other hand, has an interest in the trust property which he holds for the beneficiaries, and not

for his own benefit. A mortgagee cannot be compelled to surrender his interest in the mortgaged property until the debt secured by the mortgage is paid or otherwise discharged. A trustee has no such interest in the trust property as to permit him to prevent the termination of the trust, if there is no other reason for continuing the trust. The trustee, however, has an interest in the trust property as security for his right to compensation and to indemnity for expenses properly incurred by him in the administration of the trust, and cannot be compelled to surrender the trust property on the termination of the trust until he is paid or secured for the amount thus due him."

A fiduciary relationship exists between the trustee and the beneficiary of a trust which is not ordinarily present between a mortgagee and mortgagor, although when the mortgagee is in possession a trust relationship may grow out of his liability to account for rents and profits. Jones on Mortgages, Eighth Edition, Section 881.

Security for the payment of an indebtedness may be provided through an instrument known as a deed of trust. Deeds of trust are in the nature of mortgages, the only difference being that the mortgage runs directly to the mortgagee and secures a debt to the mortgagee, while the trust deed purports to convey property to a trustee to secure the payment of an obligation which the grantor owes to a third person. Jones on Mortgages, Eighth Edition, Section 77; 36 Am Jur, Mortgages, Section 16; 59 CJS, Mortgages, Sections 5, 6 and 7.

This is an action in equity to determine whether the transaction was one of sale or one of security. The parties will be presumed to have acted in good faith and the court will seek to determine their intention and give it effect. Sherwin v. American Loan & Investment Co. 42 ND 389, 173 NW 758; Altenbrun v. First National Bank, 47 ND 266, 181 NW 590, 908; Beeler v. American Trust Co. 24 Cal2d 1, 147 Pac2d 583; Annotation 79 ALR 937; and 155 ALR 1104; Wiltsie on Mortgage Foreclosure, Fifth Edition, Section 22; 36 Am Jur, Mortgages, Section 132; Jones on Mortgages, Eighth Edition, Section 309.

Early in the history of this court, in Jasper v. Hazen, 4 ND 1, 58 NW 454, 23 LRA 58, the general rule was adopted that in

an action to have a deed declared a mortgage, the plaintiff must show the deed to be a mortgage by evidence that is clear, specific, satisfactory, and convincing. This rule was reaffirmed in McGuin v. Lee, 10 ND 160, 86 NW 714. It has been approvingly referred to in Little v. Braun, 11 ND 410, 92 NW 800; Forester v. Van Auken, 12 ND 175, 96 NW 301; Wells v. Geyer, 12 ND 316, 96 NW 289; Smith v. Jensen, 16 ND 408, 114 NW 306; Miller v. Smith, 20 ND 96, 126 NW 499; Altenbrun v. First National Bank, 47 ND 266, 181 NW 590, 908; State v. Crum, 70 ND 177, 292 NW 392.

That the general rule that a deed absolute in form must be proved to be intended as a mortgage by clear, convincing, and satisfactory proof is subject to some limitations of application is indicated in Smith v. Jensen, 16 ND 408, 114 NW 306, where it was admitted that the deed was not intended as an unconditional conveyance and the controversy was whether it was a mortgage or a conditional sale with the right to repurchase. The court held that the true character of the transaction was left in doubt by the evidence and that under such circumstances it should be held to be a mere security transaction. In Smith v. Hoff, 23 ND 37, 135 NW 772, Ann Cas 1914C 1072, it was held that when it is either admitted or shown by a separate instrument that the deed was not intended to be an unconditional transfer of title but was either a mortgage or conveyed title subject to the right of repurchase, the court is inclined to construe the transaction as a mortgage. In Sherwin v. American Loan & Investment Co., 42 ND 389, 173 NW 758, the plaintiff sought to declare a deed and a contract for deed a mortgage and not a conditional conveyance with the right of repurchase. It appeared that the plaintiff had become financially embarrassed. The defendant had acquired liens on his land. Plaintiff gave the defendant a deed to the land and as a part of the same transaction executed a promissory note for $25,000.00 representing the indebtedness against the land and received a contract for deed. The court held that in such a transaction the court would consider all the surrounding circumstances in order to ascertain the real intention of the parties and that if it clearly appeared by satisfactory evidence that the transac-

tion was intended for purposes of security the deed would be declared to be a mortgage. In Dean v. Smith, 53 ND 123, 204 NW 987, Syllabus, Paragraph 3, it is said: "When it is established by clear, satisfactory and convincing evidence that a deed, absolute upon its face, was intended as a mortgage, the court will give effect to such intention; in case of doubt, upon the evidence, the doubt will ordinarily be resolved in favor of a mortgage."

The rule with respect to the burden of proof and the weight of the evidence necessary to sustain a contention that a deed absolute on its face is in fact a mortgage that was stated in Jasper v. Hazen, supra, has the support of authority generally. However, it is subject to definitely existing but indefinite limitations, as is disclosed by the statements of various text writers. Wiltsie on Mortgage Foreclosure, Fifth Edition, Section 28; Glenn on Mortgages, Section 11; Jones on Mortgages, Eighth Edition, Section 332; 36 Am Jur, Mortgages, Sections 134 and 135; 59 CJS, Mortgages, Section 53.

When a simple deed is executed and delivered a fee simple title is presumed to be intended to pass, unless it appears from the deed that a lesser estate was intended (Section 47–1013 NDRC 1943) and to overcome this presumption the evidence must be clear, convincing, and satisfactory. But when it is shown by evidence meeting these standards that a deed purporting to be absolute on its face is a part of or an incident to a transaction other than an absolute conveyance, the presumption has been overcome and questions pertaining to the nature of the transaction are thereafter resolved upon the basis of the preponderance of the evidence. If at this stage of the proof doubt arises whether the transaction resulted in a mortgage or in some other type of contractual relationship, the law which jealously guards a debtor's right of redemption will be given effect and the transaction will be held to result in a mortgage under which the grantor or mortgagor will be afforded the right to redeem.

The evidence is clear and undisputed that the quitclaim deed given to the defendant by the plaintiff and the agreement executed by the parties at the same time and dated July 18, 1950,

were given pursuant to and in furtherance of the same transaction. Reference to the agreement discloses that it negatives any presumption that the deed was intended as an absolute conveyance as of the date of its execution and delivery. Rights of the respective parties in and to the land in question, it was clearly contemplated, would depend upon the occurrence of future events. In addition to the amount advanced by the defendant to redeem from the mortgage foreclosure he also agreed to advance sufficient funds to pay the 1947 and 1949 taxes. The evidence discloses that Topp later paid the taxes for those years. He agreed to hold title to the property for four months "in trust" during which Mechtle had the "option" to sell the property or a portion thereof sufficient to pay Topp for the advances he had made. In event Mechtle failed to repay the advances within four months, Topp was to have "the whole title to said property, in fee simple and without any further claim thereon by the second party, and title shall be absolute in first party." These provisions deal with payments and title. The following provisions deal with possession and rents in the future: If the property was not sold within two weeks, Topp was to have the right to lease the premises to others or summer-fallow the cropland himself, and any lease made by Topp was to be binding upon Mechtle or any purchaser from him. Topp had the right to lease out the hay land, not from the time of the execution of the deed and agreement, but any time after July 23, 1950; and if so leased, the landlord's share of the hay crop was to be divided equally between Topp and Mechtle.

We lay aside definitions and arguments based on the technical meanings of the terms "advance," "in trust," "option to sell," "redemption," and "repay" and look upon the instrument as a whole and in the light of the testimony of the parties bearing upon their intention. The testimony of the defendant Topp given on direct examination shows that he did not regard the transaction as an absolute sale. He states that on the tenth or eleventh of July, 1950, Mechtle offered to sell him the land in question for $10.00 an acre. He would not accept the offer for the reason that the price was too high. At about noon on July 18, 1950, Mechtle came out to Topp's farm. He told Topp

that it was the last day that he could do anything about the farm and he wanted to get money to pay the mortgage off. Mechtle said it would take about $4,000.00. Topp felt that he would help Mechtle out as a good neighbor. Mechtle went into New Rockford and Topp came in later. While they were out at the farm Mechtle said he could sell the farm and settle up in about two weeks but when Topp got to town things were somewhat different. Mechtle talked Topp into letting him have four months to pay and more money besides. The additional money was to cover a judgment against Mechtle and taxes for 1947 and 1949 on the land. They went to the sheriff's office and redeemed the land, and then went to an attorney's office where Topp received the quitclaim deed and the parties entered into the agreement. No note was given for the amount advanced, and the agreement and the deed constitute the only instruments. The agreement and the evidence of the defendant Topp constitute clear, convincing, and satisfactory evidence that the quitclaim deed was not an absolute and unconditional conveyance of title.

The defendant states his position thus: "The defendant contends that the deed was an absolute conveyance, and the additional agreement was merely an option for a period of four months to the plaintiff to re-purchase the land and if not accomplished within that time the title should remain in defendant as an absolute title in fee simple, and that there was no *intention* that the deed or agreement should operate as a mortgage, with a right of redemption. That there was no obligation on the part of the plaintiff to exercise the option or to re-purchase the land. That there was no note or other evidence of any debt from plaintiff to defendant."

We have already pointed out why the transaction taken as a whole and including both the deed and the mortgage did not result in an absolute conveyance. The agreement did provide that Mechtle "will have the option to sell the said property or a part thereof sufficient to repay the first party for the advances that he has made." Obviously, this so-called option was inserted to provide a means whereby Mechtle might sell a part or all of the land to secure funds to repay the money that had

been provided by Topp for redeeming the land and paying the 1947 and 1949 taxes. It was only after Mechtle should fail to exercise this so-called option or fail to repay Topp for the advances that Topp was to have absolute title to the property. Clearly, it was neither the intention of the parties nor the legal result of the transaction that absolute title pass at the time the deed was delivered. Moreover, Topp's own testimony discloses that he did not intend an outright purchase.

The contention that there was no intention that the deed or agreement should operate as a mortgage with the right of redemption has both merit and demerit. The agreement discloses that there was a right of redemption in the sense that Mechtle was entitled to pay what Topp advanced and get his land back. On the other hand, the parties did not intend that a right of redemption should exist which would require a foreclosure if Mechtle failed to repay. Further reference to Topp's testimony clearly shows it to be his intention that the transaction was one of security to assure to him that he would either get the money back or get the land. Topp testified that when Mechtle approached him he was told that Topp was not interested in buying the land. About a week afterwards he advanced $3,853.80 so that Mechtle could redeem, took the quitclaim deed and entered into the agreement. Later he paid taxes for 1947 and 1949 amounting to $1,068.19 and a judgment against Mechtle for $137.60. These items are consistently referred to by Topp in his testimony as advances, and under cross-examination the record shows this:

"Q. You were making these advances — You made these advances of cash so he could redeem it — redeem the property, is that correct?

"A. Yes.

"Q. They were — that is, you meant them to be a loan, did you not?

"A. Well, yes."

Topp also testified that in January 1951 he paid $514.00 for 1950 taxes.

The defendant points out that there was no note or other evidence of debt given to the defendant by the plaintiff. The existence of an obligation is an essential element of a mortgage but that obligation need not be reduced to writing as the defendant seems to infer. There can be no mortgage without a debt. Miller v. Smith, 20 ND 96, 126 NW 499. It is essential that there be an agreement, express or implied, on the part of the mortgagor or other person in whose behalf the mortgage is executed to discharge an obligation in some form owing to the mortgagee. Dean v. Smith, 53 ND 123, 204 NW 987. In this case when Topp advance the money to the sheriff to redeem Mechtle's land from foreclosure, there instantly arose an implied obligation on the part of Mechtle to repay the money so advanced. In Minnesota it is held that where the nature of a transaction is a loan advanced upon the security of real estate conveyed to the party making the loan, it is nevertheless a security transaction which results in a mortgage and is nonetheless a mortgage because the advance is made wholly upon the security and without any personal obligation on the part of the borrower. Hewitt v. Baker, 222 Minn 292, 24 NW2d 47; Grout v. Stewart, 96 Minn 230, 104 NW 966; King v. McCarthy, 50 Minn 222, 52 NW 648.

An obligation on the part of Mechtle to repay the money advanced by Topp arose as soon as Topp delivered his check to the sheriff who thereupon executed a certificate of redemption to Mechtle. That this obligation continued is conclusively established by the agreement which made the payment of the obligation within four months the condition of defeasance.

In Pomeroy's Equity Jurisprudence, Fifth Edition, Section 1195 we find a discussion of the existence of a debt as a general criterion as to whether a particular transaction amounts to a mortgage or to a sale with an option to purchase. The writer states that:

"The practical test is whether there is a liability, notwithstanding or independent of the conveyance and contract of reconveyance, which the grantee can enforce against the grantor. If a loan is made to the grantor at the time of executing the

conveyance, and the continued existence of his indebtedness therefor is evidenced by some collateral engagement given by the grantor, such as a note or bond, the case is simple and the transaction is clearly a mortgage. In the second place, if the conveyance is given in consideration of an antecedent debt due from the grantor, and this debt yet remains, so that the grantee may enforce his claim at some time or another against the grantor, the transaction is also a mortgage. But if this antecedent debt is wholly satisfied and extinguished by the conveyance, so that no liability remains under any circumstances against the grantor, then there is no mortgage, since there is no debt to be secured thereby. In such a case the surrender up by the grantee of the written evidences of original indebtedness, or his cancellation thereof, would be very material circumstances. Thirdly, there may be neither a present loan nor an antecedent debt, but the grantee may undertake to assume some outstanding liability of the grantor, or to pay off some claim against the grantor, so that an obligation to reimburse him would rest upon the grantor, and the conveyance may be intended to indemnify the grantee and to secure the performance of the grantor's future continuing obligation, in which case it would clearly be a mortgage."

The plaintiff's version of what took place at the defendant's farm on the last day of redemption is that he made no attempt to sell the land to the defendant. The defendant made no statement that he would buy the farm. There was no discussion at that time as to the value of the land. The plaintiff was trying to raise money to redeem and told the defendant that he thought it would take about $4,000.00, and the defendant stated that he would loan the plaintiff the amount necessary to redeem the land. Throughout a vigorous cross-examination, the plaintiff stoutly maintained his position that he was making a loan in order to redeem his land. On the other hand, at no place in his testimony does the defendant state, either directly or indirectly, that he was buying the land.

The defendant quotes extensively from the case of Dean v. Smith, 53 ND 123, 204 NW 987. In that case many of the distinguishing characteristics between mortgages and deeds ab-

solute are discussed. When the facts in that case are compared with the one under consideration, features of similarity and features of difference appear. Both cases involve a deed absolute on its face and an agreement in writing entered into on the same day. However, the agreement in that case differs materially from the one here involved. In that case the agreement contained no redemption provision. Nor does the agreement as quoted in the opinion vest in the grantor a right of repurchase. This court reversed the trial court and held the deed to be absolute. The opinion lays stress on the rule that "it is essential that there be an agreement, express or implied, on the part of the mortgagor or other person in whose behalf the mortgage is executed, to pay a debt, or discharge an obligation in some other form, owing to the mortgagee." This court held that there was no debt, and consequently, there could be no mortgage. In Wiltsie on Mortgage Foreclosure, Fifth Edition, Section 23, it is said:

"The continuance of the indebtedness between the parties or its extinguishment is a circumstance always to be considered and is the strongest and surest test in determining whether a deed is a mortgage. But a personal obligation on the part of the mortgagor is not essential to a valid mortgage.

"It is not necessary that a deed, in order to be declared a mortgage, shall specify the indebtedness. And the existence of an affirmative covenant or promise to pay the debt is not necessary. Without that a deed will be declared a mortgage if it appears that it was intended as security for a debt.

"But where a conveyance was made in payment or satisfaction of indebtedness, it cannot be considered a mortgage. But a deed may be considered a mortgage to secure future advances if that was the intent of the parties; and the fact that the amount to be advanced is unliquidated or unstated, is immaterial. And though a grantee agrees to assume certain debts of the grantor for which the deed is given to secure does not prevent the transaction from being a mortgage where the debts are not extinguished."

In this case the defendant agreed to provide the plaintiff sufficient money to redeem from the mortgage foreclosure and

to advance the further sum necessary to pay the 1947 and 1949 taxes. This agreement was carried out, the money was furnished to make the redemption and a debt created. That part of the transaction which was reduced to writing, namely, the giving of the deed and the execution of the agreement, did not pay that debt and did not pass absolute title to the defendant. The result is a security transaction. This conclusion is supported by the further fact that the property was worth considerably more than the amount of money which the defendant agreed to furnish at the beginning of the negotiations, which was about $4,000.00. Later it developed that there was something over $1,000.00 more due in taxes. The testimony shows that the property was worth from $10,000.00 to $12,000.00. Inadequacy of consideration is a circumstance that may be considered. Dean v. Smith, supra; Davis v. Wilson, 237 Iowa 494, 21 NW2d 553; Hoover v. Bouffleur, 74 Wash 382, 133 Pac 602; Phillips v. Blaser, 13 Wash2d 439, 125 Pac2d 291. It may be noted that in Dean v. Smith, supra, the price was adequate, a fact which the court thought was particularly impressive in view of the circumstances in that case.

It will also be noted that under the terms of the agreement it was provided that the defendant would hold the title to the property for four months "in trust for the second party." This provision clearly did not, under the circumstances surrounding its use, create a true trust, nor did it make of the quitclaim deed a trust deed in the common usage of that term whereby a grantor conveys property to a trustee to secure an obligation which the grantor owes to a third party. But even trust deeds of that nature are in fact mortgages and not absolute conveyances. Phillips v. Phillips, 53 ND 66, 204 NW 985; 36 Am Jur, Mortgages, Section 16. The use of the term "in trust" is inconsistent with the idea that an absolute estate was intended to be granted. Darrah v. Darrah, 202 Pa 492, 52 Atl 183.

The deed and agreement when taken together clearly establish a transaction whereby the land was hypothecated to the defendant as security for the sum which he advanced to redeem from the foreclosure and for future advances that he might

make and constituted a mortgage. The right of redemption has not been terminated and is still available to the plaintiff.

The defendant is in possession of the property with the exception of the dwelling and possibly other buildings wherein the plaintiff has personal property stored. The plaintiff has asked for an accounting. He is entitled to have the defendant account for the profits that have accrued during the defendant's possession and to have them applied toward the liquidation of plaintiff's indebtedness to the defendant. Nelson v. Bowen, 124 Cal App 662, 12 Pac2d 1083. See annotation 46 ALR 138.

The judgment appealed from is reversed and the case is remanded for further proceedings consistent herewith.

GRIMSON, CHRISTIANSON, SATHRE and BURKE, JJ., concur.