John BURR, Administrator of the Estate of Emily Kelley Worst, Deceased, Plaintiff and Appellant,

v.

Loretta J. KELLEY, Defendant and Respondent.

No. 7467.

Supreme Court of· North Dakota.

Jan. 17, 1956.

C. N. Cottingham, Fairview, Montana, and Robert W. Palda, Minot, for appellant.

Walter O. Burk, Williston, for respondent.

BURKE, Chief Justice.

John Burr is the administrator, with the will annexed, of the estate of Emily Kelley Worst, deceased. He brought this action on behalf of the estate of the deceased, seeking an adjudication that a certain deed executed and delivered by the deceased to the defendant, Loretta J. Kelley was in fact a mortgage. The plaintiff has appealed from an adverse decision of the District Court. Upon this appeal a trial de novo is demanded and the only·question is whether the evidence supports the findings and conclusions of the trial court which sustained the defendant's contention that the deed was an unconditional conveyance.

The land involved in this suit is an 80 acre tract in McKenzie County. It was

acquired by the deceased in 1911. In 1933, the deceased lost title to the land by the foreclosure of a mortgage held by Dilla I. Phillips, but she continued to live thereon and in December 1936, she purchased the land by executing a contract for deed to Miss Phillips. Upon the execution of the deed, deceased made an initial payment of $1,500 and the contract obligated her to pay $1,000 each succeeding year until the contract price of $7,000 with interest at 6% per annum was paid. Deceased made the payment of $1,000 in December 1937, but early in 1938 she became aware that she would be unable to meet the payment which would become due in December of that year. The deceased's sister, the defendant in this action who lived in Washington, D. C., had helped deceased on previous occasions when she needed money. In 1928, defendant had sent the deceased almost $800 to pay back taxes and in 1938, the total advances she had made to help the deceased amounted to about $1,200. In the spring of 1938 deceased again wrote the defendant asking for financial assistance. Defendant did not answer her first letter so deceased wrote to her again on May 28th, 1938. This letter in so far as it is pertinent is as follows:

"Dear Lollie:

"You haven't answered my letter and I suppose you are mad because I am expecting you to help me save the place and give me a chance to buy it back.

"I am enclosing the deed to you and a contract agreement, and a copy of it for you to sign and send me the copy, (if you will sell it back to me).

"I'll have to offer Phillips $4,000.00 as there's no chance of getting it for less and I don't believe he will take it at all as a snake living on the place joining me on the north has been chasing him, pushing $8,000.00 under his nose for several years—I saw him coming out of there the other day and he may have the place bought from Phillips by now. People ask me why I don't try to raise the money some way to save it and I told a friend that

you might help me, but I wasn't sure and he said, anyone that would not grab at a chance to get a place like this for $4,000.00 must be crazy!

"You can sell it at any time for $8,-000.00 if we can get it * * *.

"I saw the banker of the Sidney National Bank, Mr. J. A. Loken and he will help us deal with Phillips, if you will send the $4,000.00 to that bank—to be held for Phillips if he will accept it and give a deed."

Thereafter the defendant sent $4,000 to the bank at Sidney to be turned over to Dilla I. Phillips upon the execution and delivery of a deed to the property to the defendant through the agency of the bank. This transaction was completed, the deed was recorded and forwarded to the defendant in Washington. On the same day this deed was executed the deceased executed and delivered to Dilla I. Phillips five promissory notes in the sum of $100.00 each. These notes were at a later date paid by the deceased.

The defendant never executed the contract for deed which deceased had forwarded with the deed she sent her and the deed from the deceased to the defendant was not recorded until after the death of the deceased in 1952.

From the time of the transfer from Phillips to the defendant, the deceased, up to the time of her death, continued to live on the land. Some years she farmed all of it herself. In some years she leased it to other persons. She took all of the proceeds of the crops and made no accounting therefor to the defendant. The land was irrigated land and with minor exceptions the deceased paid all of the irrigation charges while the defendant paid all of the taxes. The insurance on the farm buildings was carried by the deceased and when the dwelling house thereon burned down the deceased replaced it with a basement structure which was presumably paid for with the proceeds of the insurance. Certain repairs on other farm buildings were made by the deceased although the

extent and cost thereof is not made clear by the evidence.

As with other contracts the controlling factor in determining whether a deed, absolute on its face, was executed as a mortgage is what the intention of the parties was at the time of the execution of the instrument. Ginter v. Ginter, N.D., 63 N.W.2d 394; Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842; Sec. 47–1013, NDRC 1943.

Here in so far as the record shows, all of the negotiations between the parties to the deed were conducted by mail. The first letter written by the deceased to the defendant is not in evidence. It appears, however, that defendant did not answer that letter. The second letter contains deceased's proposal to the defendant. It expresses a hope that defendant will help deceased save her land and sell it back to her. There were contained in this letter a deed executed by deceased, and a contract for deed which was to be executed by the defendant if she would sell it back. The clear import of the letter is that the deed was intended as an absolute conveyance, that it was not delivered upon condition that defendant sell the land back but that it was left to defendant's option whether she would sell the land back or not. Some seven months after the receipt of this letter defendant purchased the land from Dilla I. Phillips. There is nothing in the record as to what transpired in the meantime.

Defendant's testimony as to what the final arrangement was that "she (the deceased) was to keep the taxes paid as long as I let her have use of the land. I was to let her live there and it was to be a home place. She could live there and Elizabeth could live there and when I came to retire, if I wanted to live there, I wanted a home place of my own. I wanted a place for both she and Elizabeth and myself when I needed it, or any member of the family that wanted to could go there and live."

We do not think the proof offered by the plaintiff is sufficient to overcome defendant's positive testimony as to the nature of the transaction.

Before a deed absolute on its face will be declared a mortgage, the proof that it was intended as such must be clear, satisfactory and convincing. Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842; State v. Crum, 70 N.D. 177, 292 N.W. 392; Altenbrun v. First National Bank, 47 N.D. 266, 181 N.W. 590, 908.

Loretta Kelley, Emily Kelley Worst and Elizabeth Kelley Delbon were sisters. Elizabeth was an invalid and to a large extent was dependent upon her brothers and sisters for care and support. She lived a large part of the time on the farm with Emily and from time to time Loretta sent her money. Loretta had also sent Emily about $1,200 between 1928 and 1932 to help her save the land. Despite this assistance she lost the land by foreclosure in 1933. In December 1936 Emily bought the land back on contract for deed. In the spring of 1938, Emily again sought Loretta's aid to help save the farm, despite the fact that she had made no payments of either principal or interest on prior advances from Loretta, some of which had been made at least ten years previously. In furtherance of this request she sent Loretta a deed to the land and informed her that she could purchase Dilla Phillips' interest for $4,000. At the same time she offered to buy the land back if Loretta would sell it to her. The amount of the offer according to the proposed contract was $5,000, payable in annual installments of $500 each with interest at six per cent per annum. Loretta never signed this contract. Presumably she replied to Emily's letter in which the offer was made, as she testified that she wrote Emily several times between May and December 1938. None of this correspondence is in the record. In December 1938, Loretta paid Dilla Phillips $4,000 and received a deed to the land through the agency of the bank at Sidney. Emily was present and assisted in completing this transaction although Loretta had not accepted her offer to buy the land back. We see nothing unreasonable in Loretta's refusal to extend Emily the necessary credit to allow her to buy the land.

She had failed twice in her previous attempts to save and buy this land. She had failed to pay Loretta any of the money she had advanced in prior years. In fact it would have been reasonable for Loretta to assume that the payments offered by Emily would not be made, and that the contract, if executed, would soon be in default. It was not unreasonable for Emily to accept the arrangement as testified to by Loretta. That is, that Loretta should buy the place as a family home, particularly for herself, Emily and Elizabeth and that Emily should have all the income from the farm and keep it up. It was a family arrangement, by which the solvent member provided security for all.

That Emily thereafter carried the insurance on the place, rebuilt the home which was destroyed by fire, made some repairs on the buildings, took all the crops and paid the irrigation charges are not facts which are in any way inconsistent with that agreement. That Emily thereafter made no payments of any kind to Loretta to pay back the $5,200 Loretta had advanced in connection with this land and that Loretta made no demands for any payments during the 14 years that elapsed between the giving of the deed and Emily's death, are facts from which it may be inferred that whatever indebtedness Emily owed Loretta was considered satisfied by the deed. Furthermore, the evidence shows that a few years before she died Emily stated to a prospective purchaser of the land that she could not sell it because it belonged to her sister Loretta Kelley. The only circumstance in the case which is to any extent, inconsistent with defendant's testimony is the fact that in a letter to her sister Elizabeth, written in 1946, she stated: "I don't give a d——— what she does, or how soon she sells the only thing I am concerned with is the amount owing to me which will amount to around $7,000. I am not stopping her from selling it if she can get anybody to buy and she can have all she can get over and above what is due me." This statement, in so far as it refers to an indebtedness is consistent with a security transaction as claimed by plaintiff, however, the second part of the statement in which Loretta assumes that she had the power to decide whether the land should be sold or not and to determine the extent to which Emily should share in the proceeds are consistent with her claim that she bought the land and inconsistent with the claim that the deed was given as security only.

The evidence in this case is to the effect that both parties to the deed construed it as an absolute conveyance. The administrator plaintiff asks that this evidence be disregarded because of circumstances which he says are inconsistent with that construction. In our opinion, these circumstances are not sufficiently persuasive to constitute proof that is clear and convincing.

We have considered this case upon the theory advanced by the pleadings, followed by the trial court and argued to this court upon appeal. There is, however, a serious question as to whether the relief sought by plaintiff in this action would have been proper even if the facts had been found to be as alleged in the complaint. We do not decide that question for the reason that our finding, that the deed given by the deceased to the defendant was an absolute conveyance, settles the case. The judgment of the District Court is therefore affirmed.

MORRIS, SATHRE, JOHNSON and GRIMSON, JJ., concur.