Isadore KADRMAS, Plaintiff and Appellant,

v.

Donald Frank KADRMAS, Defendant and Appellee.

Civ. No. 9405.

Supreme Court of North Dakota.

March 31, 1978.

As Corrected on Denial of Rehearing April 20, 1978.

As Corrected April 28, 1978.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellant; argued by Ward M. Kirby, Dickinson.

Freed, Dynes, Malloy & Reichert, Dickinson, for defendant and appellee; argued by George T. Dynes, Dickinson.

SAND, Justice.

The plaintiff, Isadore Kadrmas, appealed from a Dunn County district court judgment dismissing with prejudice his complaint against the defendant, his son, Donald Kadrmas.

Isadore, by summons and complaint, initiated an action for a judgment declaring, among other things, that the warranty deed conveying from him to Donald the South Half of Section Twenty-seven (27), Township One Hundred Forty-one (141) North, Range Ninety-five (95) West of the 5th P.M., Dunn County, North Dakota, was subject to a trust for his (Isadore's) use and benefit.

Donald answered by alleging that the deed was an absolute and unrestricted conveyance of the property by Isadore Kadrmas and Emma A. Kadrmas for an agreed-upon consideration.

The court, in its conclusions of law, stated that Donald was entitled to judgment and

"That said conveyance was subject to two separate oral sale agreements, one between the Defendant and the Plaintiff and the other between the Defendant and Emma Kadrmas, each such agreement providing as follows:

1) The sale price of the land was to be Eighty-five Dollars ($85) per acre or a total of Twenty-seven Thousand Two Hundred Dollars ($27,200) to be divided evenly, one-half to Isadore Kadrmas and one-half to Emma Kadrmas.

2) A down payment of Ten Thousand Dollars ($10,000) was to be paid, divided evenly between Isadore Kadrmas

and Emma Kadrmas, and such funds would be applied in part to pay existing debts with the balance to be paid to the two sellers.

3) The remaining amount of Seventeen Thousand Two Hundred Dollars ($17,-200) was to be paid equally to Emma Kadrmas and Isadore Kadrmas over a period of time commencing five years after the sale date and terminating not later than fifteen years after the sale date which was September 20, 1966.

4) No interest was to be charged or payable on the outstanding indebtedness."

At the time the deed was executed, 20 September 1966, conveying the property to Donald, the plaintiff Isadore and his estranged wife, Emma, were parties to a separation action in Stark County district court. Also at that time the Stark County district court's order dated 18 July 1966 resulting from the separation action was in effect, which stated:

"That the defendant Isadore Kadrmas is enjoined and restrained from in any way, anywise or manner transferring, selling, encumbering, mortgaging or otherwise disposing of any of the property owned by the defendant or the parties to this marriage, except that grain may be marketed if the conditions demand same, and in the regular course of business."

This order was not rescinded until 24 May 1971, when the Stark County district court entered an order dismissing the separation action for lack of prosecution.

Isadore, on appeal, contended the deed to Donald is invalid because it was executed by Isadore in violation of a court order restraining the disposition of the marital property.

There was testimony at the trial that Isadore and Emma, who are separated, but not divorced, dropped their separation action after the conveyance and sale of the land to Donald, and the agreement that the proceeds from the sale were to be divided evenly between them. At the outset, we note that neither Isadore nor Emma, nor any party outside the separation action, contested the validity of the sale of the land to Donald during the period the injunction was in effect. The injunction was only temporary and was later vacated by the court.

Although a court has the power to order a return to the status quo or to treat a transaction invalid where an injunction has been violated [see, generally, *Webb v. Webb*, 375 Mich. 624, 134 N.W.2d 673, 674 (1965)], the trial court was not requested to do so during the period the injunction was effective. The trial court found:

"That for almost ten years after the issuance of said deed no one made any objection to the retention of ownership of said property by the Defendant and his acceptance of annual income including rental from Joe Meduna and rental from annual oil and gas lease payments. That the first serious objection by the Plaintiff or anyone to the retention of title to said property by the Defendant, in his individual name, occurred in June or July 1976 when the entire family met at the Defendant's residence in Bismarck." Finding of Fact No. VIII.

Because no request was submitted to the trial court until after the vacation of the injunction on which Isadore relies, we conclude that the court did not err as a matter of law in refusing to declare the conveyance of land to Donald invalid on this ground.

We note that an injunction restraining the parties to a divorce suit from disposing of marital property operates in personam only as to the parties to the divorce action. *Dodd v. Crowe*, 51 Ohio App.2d 40, 365 N.E.2d 1257 (1976). Donald was not a party to the separation action; therefore, the injunction would not operate against him to preclude a valid conveyance of the land to him, unless, possibly, he had notice of the injunction. See *Dodd v. Crowe, supra.* However, we do not believe the issue raised by Isadore [1] is meritorious. Our decision is

1. Isadore's position would be untenable if his argument were correct because the injunction would equally well apply to the constructive trust which is a form of disposition of the property prohibited by the injunction.

based on the fact that both parties to the separation action resulting in the injunction order (presumably for Emma's benefit) were involved in the conveyance to Donald and the fact that during the time the injunction was in effect neither party, nor anyone else, contested the validity of the conveyance.

In the second issue, Isadore contends that the deed (contract) upon which Donald relies to prove the sale of the land is invalid because it failed to more specifically state the consideration, as required by the Statute of Frauds, § 9–06–04, North Dakota Century Code.

Section 9–06–04, NDCC, provides that an agreement for the sale of real property is invalid "unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent . . . ."

Rule 8(c), North Dakota Rules of Civil Procedure, provides that the statute of frauds is an affirmative defense which must be specially pleaded.

We note that Isadore did not affirmatively plead this defense in either the original complaint or in the amended complaint dated 5 July 1977, which was a considerable time after Donald, in his answer to the original complaint dated 29 November 1976, alleged that the conveyance to him was a sale "for an agreed upon compensation, to be split evenly between the two grantors . . . ." Isadore may have waived the statute of frauds challenge to an oral contract for the sale of real property by failing to specially plead it. See *Baldus v. Mattern,* 93 N.W.2d 144, 152 (N.D.1958). But it is not necessary to resolve this issue because of our disposition of this case.

From the transcript, it appears that the statute of frauds issue was first alluded to by Isadore's counsel after his closing argument when he stated matter-of-factly to the court that "There are violations of the statute of frauds of the State of North Dakota . . . ."

In *Erickson v. Wiper,* 33 N.D. 193, 157 N.W. 592, 595 (1916), this court said that generally the statute of frauds does not apply where one party has fully performed the contract. See, also, *Ridenour v. Kuker,* 185 Neb. 321, 175 N.W.2d 287, 290 (1970). In the instant case, Isadore and Emma fully performed their part of the contract by executing an unrestricted and absolute deed to Donald. The trial court, in its findings of fact found that Donald had paid Isadore the sum of $12,095.39 on his total obligation of $13,600, leaving an unpaid balance of $1,504.61; and that he had paid Emma $8,630 on a debt of $13,600, resulting in an unpaid balance of $4,970. In fact, the trial court, in its findings of fact, outlined the terms of the oral contract.

■ Although the deed to Donald did not contain all the terms of the oral contract for the sale of the land in question, and although it may not strictly comply with and satisfy the statute of frauds as a written memorandum of the. consideration for the sale of the land [see, e. g., *Heinzeroth v. Bentz,*[2] 116 N.W.2d 611 (N.D.1962)], we conclude that this challenge is barred. As pointed out above, the first party has fully performed the contract and the second party has partially performed. See, e. g., *Buettner v. Nostdahl,* 204 N.W.2d 187 (N.D. 1973). Also, Isadore has failed to assert the statute of frauds in his pleadings, or later, at the hearing where testimony was presented by Donald attempting to prove the oral portion of the warranty deed relating to the terms and agreement of the sale of the land in question.

■ The final issue which Isadore raised on appeal is that the trial court erred by not imposing a constructive trust upon the real property conveyed to Donald by Isadore and Emma. The complaint also alleged

---

2. The court here held that the statute of frauds was not satisfied by a statement in a deed that the consideration was one dollar and other good and valuable consideration, where the deed was held in escrow, the purchase price was unpaid, and no memorandum stated the amount of the purchase price.

that the warranty deed was executed at a time when Isadore was suffering from a severe case of alcoholism and had incurred a considerable amount of indebtedness and that he feared proceedings might be instituted to determine his competency. The evidence failed to support this allegation. The trial court, in its conclusions of law, said that the evidence failed to establish the existence of any constructive trust, beneficial interest or any other interest by Isadore in the real property. In its finding of fact No. XI, the trial court stated:

"That the Plaintiff has entirely failed to sustain his burden of proof, by a preponderance of the evidence, in establishing the creation of any constructive trust in this case. On the contrary the evidence has established, by a preponderance of the evidence, that there was a sale of said property from Isadore Kadrmas and Emma Kadrmas to Donald Frank Kadrmas for the specific sale terms set forth above."

In *Scheid v. Scheid,* 239 N.W.2d 833, 838 (N.D.1976), we reiterated the well-settled rule

" . . . that a party seeking to have the court impose a constructive trust (which, in legal effect, would set aside a deed absolute on its face) bears a heavy evidentiary burden. Such party must present clear and convincing evidence that the facts and circumstances involved in the particular case warrant imposition of a constructive trust, pursuant to the applicable statute."

But the trial court in this instance concluded that Isadore even failed to establish a constructive trust by the preponderance of the evidence.

Although Isadore alleged that the property was conveyed to Donald with the intent that he hold it in trust for himself and Emma, he was unable to establish this with credible evidence. Emma testified regarding the sale of the land that Donald bought this land from Isadore and herself for $85 per acre in 1966, which she thought was top price at that time. She also testified that Donald said he would take care of us as long as we lived and that Donald called a lot of times and asked, "Do you want some money?" and she said, "As long as I work I don't need the money."

Donald came into full possession of the land after it was conveyed to him in 1966. The trial court found that Donald received rental income on the land from Joe Meduna for a period of approximately ten years; Donald paid Isadore $12,095.39, leaving a balance due and owing of $1,504.61; Donald paid Emma $8,630, leaving a balance to be paid to Emma of $4,970; and Donald agreed to pay the owing sums in full forthwith. Donald executed a note and mortgage in favor of the State Land Department on 28 April 1967 in the amount of $9,500.

Section 59–01–06, NDCC, provides that an implied trust arises when:

"1. One who wrongfully detains a thing is an implied trustee thereof for the benefit of the owner;

"2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;

"3. Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such trust, unless he purchased it in good faith and for a valuable consideration;

"4. When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

Although Isadore alleged the breach of a confidential relationship by Donald, as well as undue influence in obtaining the property, he did not prove to the trial court's satisfaction that Donald wrongfully acquired title to the property.

Rule 52(a), North Dakota Rules of Civil Procedure, limits our scope of review in this case, which was tried without a jury. We can set aside a finding of fact only if, based on all the evidence, we find it clearly erroneous. See *Trengen v. Mongeon,* 206 N.W.2d 284, 289 (N.D.1973).

After reviewing the evidence, we have come to the conclusion that the trial court did not err in failing to find fraud or undue influence on the part of Donald in acquiring title to the land in question, or a breach of a confidential relationship as defined by § 59–01–08, NDCC. See, generally, *Wildfang-Miller Motors, Inc. v. Miller,* 186 N.W.2d 581 (N.D.1971).

We have noted, in the past, our reluctance to "ingraft a trust by parol on the legal title to real estate," and have required a high degree of proof or clear and convincing evidence in order to establish such a trust. *Shong v. Farmers' and Merchants' State Bank,* 70 N.W.2d 907, 911 (N.D.1955). Based upon a review of all the evidence, we agree with the trial court that Isadore has failed to meet this burden of proof. There is no justification for us to set aside the trial court's finding of fact that Isadore failed to establish circumstances warranting the establishment of a constructive trust.

The judgment appealed from is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.