Rosemary WEIGEL, Plaintiff/Appellee,

v.

Bill RIPPLEY, a/k/a Billy Rippley, d/b/a Rippley Construction Company, Defendant,

and

Martsey Rippley, Douglas Rippley, Debra Kuntz and Billy Rippley, Additional Defendants/Appellants.

Civ. No. 9617.

Supreme Court of North Dakota.

Aug. 2, 1979.

Rehearing Denied Aug. 22, 1979.

Wheeler, Wolf, Wefald & Peterson, Bismarck, for plaintiff/appellee; argued by Albert A. Wolf, Bismarck.

Zuger & Bucklin, Bismarck, for additional defendants and appellants; argued by Robert V. Bolinske, Bismarck.

PAULSON, Justice.

Rosemary Weigel ["Mrs. Weigel"] commenced an action against Bill Rippley ["Rippley"]; Rippley Construction Company; and Martsey Rippley, Douglas Rippley, Debra Kuntz, and Brice Rippley ["children of Bill Rippley"] to reacquire certain real property located in Burleigh County which Mrs. Weigel had deeded to Rippley. Mrs. Weigel and Rippley agreed to a settlement of the lawsuit on the claims against Rippley and the construction company, but Mrs. Weigel and Rippley's children failed to reach a settlement agreement. The district court determined that Rippley had held the property for Mrs. Weigel under a constructive trust; that Rippley had transferred certain portions of the property to his children; that the children were not good faith purchasers for value of the property and that, therefore, the children of Rippley were required to reconvey the property to Mrs. Weigel.

In 1956, Mrs. Weigel and her husband, Pius Weigel ["Weigel"], purchased 640 acres of land southeast of Bismarck in Burleigh County. In 1967 Weigel transferred his interest in the property to Mrs. Weigel by quitclaim deed. After numerous liens and judgments were levied against the property, it was sold at a sheriff's sale on February 5, 1969, subject to Mrs. Weigel's one-year right of redemption.

During the one-year redemption period, the Weigels considered alternative methods to avoid losing the land. Weigel testified at the trial that a real estate salesman had informed him that the property would be a good location for a trailer court. Weigel then approached Rippley, a longtime friend who had loaned him money in the past, and they began arranging a business deal that would prevent the Weigel land from being forfeited to the Weigel creditors. Following an appraisal of the land, further negotiations regarding the project were held which resulted in the following agreement set forth in a letter from Mrs. Weigel to Rippley:[1]

Mr. Billy Rippley
2003 St. Joseph Drive
Bismarck, North Dakota

The purpose of this letter is to set forth our understanding of the agreement between us with respect to the conveyance to you of the following described land in Burleigh County, North Dakota:

*Township 138 North, Range 79 West*
Section 19: All of the N ½ except W ½ NW ¼ NW ¼
Section 20: NW ¼, SE ¼
[620 acres, not including the Weigels' farmstead]

---

1. Although Mrs. Weigel had title to the land, Weigel did most of the negotiating with Rippley, i. e., he acted as Mrs. Weigel's agent.

This land is presently owned by me, subject to various mortgages, liens and other encumbrances. I have agreed to convey the land to you, subject to such mortgages, liens and other encumbrances as appear of record.

Upon delivery of a deed conveying such land to you, you have agreed to secure such finances or loans as you may be able to to satisfy and clear the record of all of such mortgages, liens and other encumbrances, except the mortgage held by you, dated August 16, 1968, and such new and current mortgage which you have to execute and deliver for the purpose of securing the financing necessary for the satisfaction ~~and~~ of the presently existing, mortgages, liens and other encumbrances. It is our intention that upon clearing the record of the existing mortgages, liens and other encumbrances, ~~the land~~ we will use the land, ~~with the~~ as encumbered by the new financing as an asset to enter into the trailer park business, which shall be owned by us on a mutually agreeable basis, taking into account all of the obligations presently owing by me or my husband to you and all other equities between us. *If we are unable to reach such mutual agreement within one year from this date, I shall have the right to repurchase the land by paying you all moneys presently owing plus such other money you were required to advance for the purpose of accomplishing the intent of this letter.*

If the above is in accord with your understanding of our agreement, please indicate your approval and acceptance by signing on copy of this letter and returning it to me.

> Very truly yours
> Rosemary Weigel
> Rosemary Weigel

Approved and accepted
this_____day of January
1970
[signature]
Billy Rippley

The agreement was executed on January 22, 1970, and Rippley then cleared the property of the encumbrances which had resulted in the sheriff's sale. In May of 1970, more money was needed for the trailer court project, so Mrs. Weigel deeded the 20-acre farmstead to Rippley at Rippley's request.

Pursuant to an oral agreement in early 1970 between Rippley and Weigel, Weigel was to supervise the construction of the trailer court. In addition, Weigel was to be responsible for selling mobile homes to prospective purchasers. In August of 1970, Weigel's work habits became erratic and he failed to supervise the construction project and made no effort to sell the mobile homes. After Weigel's continued refusal to assist on the projects, in violation of their agreement, Rippley informed Weigel that, because of his abandonment, Weigel was no longer involved with the two projects. The Weigels contributed nothing more to the construction project or mobile home sale project after the fall of 1970.

Rippley continued working, funding the trailer court construction, and selling mobile homes, despite Weigel's abandonment of the projects. In 1971, Rippley realized that the projects would require additional funding and he told Weigel that he was going to sell some of the land. Rippley sold approximately 35 acres in 1972 and 35 additional acres of the land in 1973.

In December of 1972, Rippley sold approximately 72 acres of the land to the Heritage Corporation. However, pursuant to the agreement between the parties, the Heritage Corporation deeded back 17 acres of the land to Rippley's children, Martsey Rippley, Douglas Rippley, Debra Rippley Kuntz, and Brice Rippley.[2] Testimony at the trial indicated that, at the time of the transfer, the children were not aware that the 17 acres had been transferred to them. Martsey testified that he first learned of the transfer in 1973. Debra and Brice testi-

---

2. Because Brice Rippley was a minor at the time this lawsuit was commenced, Billy Ripp-ley was named as a defendant as Brice's guardian.

fied that they first learned of the transfer in 1974.

Billy Rippley also transferred 4 acres of land to Martsey Rippley in May of 1974. Martsey recorded the deed on June 26, 1974. The Weigels did not know of either transfer until the lawsuit was commenced in 1974.

Billy Rippley testified that the two transfers of the land to his children constituted payment for work performed by his children on various projects for which they had not been paid. The district court, however, determined that the children were not good faith purchasers for value because they had not given valuable consideration in return for the property.

In the summer of 1974, Rippley experienced critical financial problems. Mrs. Weigel commenced this lawsuit on September 27, 1974, when it became evident that Rippley might not be able to make the mortgage payments on the land formerly owned by the Weigels and on the trailer court construction loans. In her amended complaint, Mrs. Weigel requested that the district court declare that Rippley had held the 620 acres of land in constructive trust for her and she further requested that the district court order Rippley and the Rippley children to reconvey to her the remainder of the 620 acres that had not been conveyed to good faith purchasers. The district court determined that Rippley had received title under a fiduciary relationship with the Weigels which gave rise to a constructive trust and that the Rippley children were not good faith purchasers; and the court ordered the Rippley children to transfer the 17-acre and 4-acre tracts of land to Mrs. Weigel.

The following issues are raised on appeal:

1. Did the district court err in determining that Rippley held the 620 acres in constructive trust for Mrs. Weigel?

2. If a constructive trust did exist, did the district court err in ordering the Rippley children to reconvey the 17-acre and 4-acre tracts of land to Mrs. Weigel?

Section 59–01–06, N.D.C.C., which sets forth the various situations in which implied trusts arise, provides:

"59–01–06. Implied Trust—How created.—An implied trust arises in the following cases:

1. One who wrongfully detains a thing is an implied trustee thereof for the benefit of the owner;

2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;

3. Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such trust, unless he purchased it in good faith and for a valuable consideration;

4. When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

Section 59–01–06, N.D.C.C., includes both constructive and resulting trusts although they are not labeled as such. *Zundel v. Zundel*, 278 N.W.2d 123, 127 (N.D.1979); *Scheid v. Scheid*, 239 N.W.2d 833 (N.D. 1976).

Mrs. Weigel bases her constructive trust claim on subsection 3 of § 59–01–06, N.D. C.C. She contends that the Rippley children hold the two tracts of land as implied trustees because the land was transferred to them by Rippley in violation of a trust and because they were not good faith purchasers for value. Therefore, Mrs. Weigel's claim is dependent upon the existence of the alleged constructive trust between herself and Rippley. If no constructive trust could be imposed upon Rippley, Mrs. Weigel would not be able to recover the land from the Rippley children under the constructive trust theory even if they were not good faith purchasers for value.

As this court stated, in *Scheid v. Scheid*, 239 N.W.2d 833, 838 (N.D.1976):

"A 'constructive trust' is a trust imposed by a court in equity to compel a person who unfairly holds a property interest to convey such interest to the rightful owner. Bogert, Trusts & Trustees (2nd Ed.) § 471 (1960); Note, *Implied Trusts in North Dakota, supra* 29 N.D.L. Rev. at 59. The court imposes a constructive trust to prevent the unjust enrichment of the person wrongfully interfering with the owner's possession of the property. *Bodding v. Herman,* [76 N.D. 324, 35 N.W.2d 561] *supra* at Syll. ¶ 2; *McDonald v. Miller,* Syll. ¶ 1, 73 N.D. 474, 16 N.W.2d 270 (1944)."

In *Wildfang-Miller Motors, Inc. v. Miller,* 186 N.W.2d 581, 585 (N.D.1971), this court, discussing the theory of constructive trusts, quoted from 54 Am.Jur. Trusts § 233, at pages 178–179, as follows:

"'*A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely* and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made. The tendency of the courts is to construe the term "confidence" or "confidential relationship" liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof.'" [Emphasis added.]

The court stated further:

"This general rule has long been followed in North Dakota. In *McDonald v. Miller,* 73 N.D. 474, 16 N.W.2d 270, 271 (1944), in paragraphs 1, 3, and 4 of the syllabus, this court held:

"'1. *A constructive trust will be imposed by the courts in order to do equity and prevent unjust enrichment when title to property is* acquired by fraud, duress, undue influence, or is acquired or *retained in violation of a fiduciary duty.*

"'3. The existence of a constructive or resulting trust in real property may be established by parol evidence that is clear, convincing and satisfactory.

"'4. Where it is sought to impose a constructive trust upon a conveyance of real estate the existence of a confidential relationship between the grantor and grantee is of major importance to be considered in connection with other facts and circumstances in the case.'" [Emphasis added.]

In order for Mrs. Weigel to establish that Rippley held the land in constructive trust for her she would need to prove (1) that a confidential or fiduciary relationship existed between them; and (2) that Rippley retained or transferred the land in breach of the confidential relationship.

Mrs. Weigel bears the burden of proving the existence of the constructive trust. An implied trust must be established by clear and convincing evidence. *Bodding v. Herman,* 76 N.D. 324, 35 N.W.2d 561, 563 (1948); *Scheid v. Scheid,* 239 N.W.2d 833, 838–839 (N.D.1976); and *Zundel, supra* 278 N.W.2d at 129–130. In addition, the evidence must be strong enough to support only one conclusion. *Zundel, supra* 278 N.W.2d at 130; and *Bodding, supra* 35 N.W.2d at 563.

The district court, in its memorandum opinion, determined that a constructive trust existed between Mrs. Weigel and Rippley, based upon the following grounds: (1) that the stipulation between Rippley and Mrs. Weigel (Plaintiff's Exhibit 11), which settled the lawsuit between them, constituted an admission that an implied trust relationship existed; and (2) that a confidential relationship existed between Mrs. Weigel and Rippley which was breached when Rippley transferred the land to his children.

The first ground is insufficient to establish a constructive trust between the parties. Paragraph 8 of the stipulation agreement states:

"8. That the Entry of Judgment pursuant to this Stipulation shall not alter or in any manner affect the merits of the action pending between Plaintiff and Additional Defendants."

Accordingly, the stipulation could not be considered by the district court in the case between Mrs. Weigel and the Rippley children as an admission that Rippley held the land as constructive trustee. In addition, Rule 408 of the North Dakota Rules of Evidence precludes using evidence of a compromise or offer of compromise as proof of liability for any other claim. Therefore, the district court's determination that a constructive trust existed could only be based upon other evidence showing a confidential relationship and a subsequent breach thereof.

■ The district court found that a confidential or fiduciary relationship existed between Mrs. Weigel and Rippley because a close, longtime friendship existed between the Weigels and Rippley and the Weigels had frequently relied upon Rippley for financial and business advice. After reviewing the record, we cannot say that the district court's finding that a confidential relationship existed between Mrs. Weigel and Rippley was clearly erroneous pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure.

■ After a confidential relationship has been established, it is necessary to determine whether or not the defendant has breached the confidential relationship and has been unjustly enriched in order for a court to impose a constructive trust. In making such a determination all relevant circumstances surrounding the parties' relationship must be considered.

In *Wildfang-Miller Motors, Inc. v. Miller, supra* 186 N.W.2d 581, this court upheld a constructive trust based on a confidential relationship which was breached by one of the parties. The court determined that a confidential relationship existed between the parties in *Wildfang* because the Dralles and Miller had known each other all of their lives, Dralle had been a longtime customer of Miller's automotive and implement business (Wildfang-Miller Motors, Inc.), and Miller had been an adviser to the Dralles in business matters for many years. As security for a debt owed to Wildfang-Miller, and for moneys advanced to the Dralles by Miller, Miller requested that the Dralles give him a deed to the Dralle land. The Dralles then executed a deed to Miller personally, based on Miller's assurances that " ' "at such time as your finances get into such a condition they are somewhat more healthy than they appear to be now and I will probably be in a position to return this deed to you" ' "; and " ' "In no event—I will see to it personally that you and your wife never lose this land" ' ". *Wildfang, supra* 186 N.W.2d at 584. Miller subsequently quitclaimed the property to Wildfang-Miller. This court determined that Miller's actions breached his confidential relationship with the Dralles; that Wildfang-Miller would be unjustly enriched; and the court imposed a constructive trust on the land in favor of the Dralles.

In *Grasman v. Jelsema,* 70 Mich.App. 745, 246 N.W.2d 322 (1976), a contractor constructed a building for certain landowners on property owned by them. The landowners deeded the land to the contractor as security and were given a contract to repurchase the land. When the landowners failed to make payments the contractor gave them a one-year option to repurchase the land. The landowners failed to exercise their option and the contractor gained possession of the land.

In *Grasman, supra,* the landowners' request that a constructive trust should be imposed in their favor was denied by the Michigan Court of Appeals. The court determined that the parties' intentions were established by the various documents between them; that there was no evidence of a breach of a confidential relationship by the contractor; and that the landowners had failed to reacquire the property under the conditions agreed upon by the parties.

In the instant case we must consider the circumstances surrounding the relationship between Mrs. Weigel and Rippley in order to determine if Rippley breached their con-

fidential relationship. The most important factor involves the contract between the parties which was executed on January 22, 1970, which sets forth their understanding regarding the land. The agreement provided that Mrs. Weigel would deed the land to Rippley; that Rippley would secure financing and pay off the existing mortgages, liens, and encumbrances to redeem the land which had been sold at a sheriff's sale; and that the parties would enter into the trailer park business to be owned on a mutually agreeable basis. The agreement further provided that:

"If we are unable to reach such mutual agreement within one year from this date, I shall have the right to repurchase the land by paying you all moneys presently owing plus such other money you were required to advance for the purpose of accomplishing the intent of this letter."

Mrs. Weigel and Rippley did not reach a mutual agreement regarding ownership of the trailer park by January 22, 1971. Mr. Weigel had ceased working on the trailer park project in August of 1970 and neither Mrs. Weigel nor he had any involvement with the project after that time. Mrs. Weigel did not make any efforts to exercise her right to repurchase the land when the right became effective on January 22, 1971. At no time has Mrs. Weigel attempted to repurchase the land by offering to reimburse Rippley for the moneys Rippley had spent in unencumbering the Weigel land and for certain personal debts which the Weigels owed to Rippley.

In December of 1972 Rippley sold approximately 72 acres of land to the Heritage Corporation, which then deeded 17 acres thereof to Rippley's children. At the time of the transfer, Mrs. Weigel had failed to exercise her right to repurchase for nearly two years. The second transfer of land to one of Rippley's children occurred in May of 1974.

Pius Weigel testified at the trial that he understood the agreement to be an option to repurchase the land. His testimony is a relevant factor in determining the existence of a constructive trust because he acted as Mrs. Weigel's agent throughout the transaction and his close friendship and business dealings with Rippley provided the basis for the district court's finding of a confidential relationship between Mrs. Weigel and Rippley.

■ We conclude that the parties intended that Mrs. Weigel could repurchase the property from Rippley if they could not agree on ownership of the trailer park by January 22, 1971. Because Mrs. Weigel has never exercised her right to reacquire the land by repurchase pursuant to the agreement, we cannot say that the land transfers by Rippley to his children in 1972 and 1974 constituted breaches of the confidential relationship between them which would permit a court to impose a constructive trust in favor of Mrs. Weigel.

■ Even if Mrs. Weigel's option to repurchase had not lapsed by 1972 or 1974 when the disputed transfers occurred, the district court's imposition of a constructive trust was improper because it constituted an unjust enrichment to Mrs. Weigel. Rippley has not been unjustly enriched by exercising complete ownership over the two tracts in question and by transferring them to his children.

Rippley obtained the deed to the land; Mrs. Weigel obtained an opportunity to enter into the trailer park business and an option to repurchase the land if a satisfactory business agreement could not be reached. According to the testimony, the repurchase price would have been approximately $70,000, the amount which Rippley had spent in unencumbering the property and for personal debts owed him by the Weigels.

■ By imposing a constructive trust in favor of Mrs. Weigel the district court would allow her to reacquire the land by paying nothing, despite the parties' intentions that she would have to pay a substantial sum of money to reacquire the land. It would be inequitable for a court of equity to order a remedy which would ignore the intentions of the parties, and result in one

party being unjustly enriched. A constructive trust is to be used to prevent unjust enrichment, not to cause it.

Mrs. Weigel could possibly have brought an action at law for breach of contract if her option to repurchase was still in effect when Rippley transferred the land to his children. If she had prevailed in such an action she might have been able to obtain specific performance of the contract. However, even in that event she would have had to perform her contractual obligations by paying Rippley the repurchase price.

We conclude that Rippley did not breach his confidential relationship with Mrs. Weigel by transferring land to his children. We further conclude that no basis existed for the district court's imposition of a constructive trust in favor of Mrs. Weigel.

We hold that the district court erred as a matter of law in determining that Rippley held the land as constructive trustee for Mrs. Weigel. Because Rippley did not hold the land as constructive trustee for Mrs. Weigel, the transfers to his children were not in violation of a trust pursuant to § 59–01–06(3), N.D.C.C. Therefore, we conclude that Rippley's children did not hold the two tracts as implied trustees for Mrs. Weigel.

We hold that the district court erred in ordering Rippley's children to reconvey the two tracts to Mrs. Weigel.

The right to exercise the option was not raised; therefore, we have neither discussed nor decided that issue. Consequently, neither the reasonableness of the time within which to exercise the option nor waiver, abandonment, nor laches has been considered.

The judgment of the district court is reversed.

ERICKSTAD, C. J., and PEDERSON, SAND and VANDE WALLE, JJ., concur.