In the Matter of the ESTATE OF Marie B. BENDICKSON, Deceased.

Bernard BENDICKSON, Marvin S. Bendickson, Delores Bendickson, Villa [Vialla] Mae Buss, and Chrissie Bendickson, Petitioners and Appellees,

v.

Sylvia J. SUNDQUIST, Respondent and Appellant.

Civ. No. 10600.

Supreme Court of North Dakota.

July 27, 1984.

Mervin A. Tuntland, Garrison, for petitioners and appellees; argued by Mervin A. Tuntland, Garrison.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for respondent and appellant; argued by Gregory C. Larson and Albert A. Wolf, Bismarck.

PEDERSON, Justice.

This appeal involves:

(1) The statutory presumption of ownership of sums remaining on deposit at the death of a party to a joint account;

(2) The statutory presumption of ownership of sums remaining on deposit in a trust account at the death of the sole trustee; and

(3) The application of the law of implied, constructive or resulting trusts to these statutory presumptions when family members are involved.

We conclude that the probate court erroneously applied the law in this instance and we reverse the judgment.

In the spring of 1977 in Seattle, Washington, Marie Bendickson discussed with her daughter, Sylvia Sundquist, her opinion that the probate of her (Marie's) husband's estate was the cause of much of the animosity in her family and her consequent desire that probate be avoided when she died. On October 24, 1977, after Marie had returned to her home near Garrison, she transferred funds previously held in a Seattle bank in a joint account with her son, Chris, to a joint savings account with Sylvia in Great Western Savings and Loan in Seattle.

During the following spring Sylvia spent some time with her mother in Garrison,

bringing with her some "do-it-yourself-probate-avoidance-forms" which Marie executed in Sylvia's presence and in the presence of witnesses and a notary, as follows:

(1) A trust document dated May 26, 1978 placing her checking account in a Garrison bank in trust for Marie's three sons (Bernard, Marvin and Chris) and her three daughters (Sylvia, Delores and Villa [Vialla]);

(2) A trust document dated May 26, 1978 placing a city lot in Garrison in trust for her three sons and three daughters;

(3) A trust document dated May 26, 1978 placing a savings account in Shoreline Savings in Seattle in trust for "Sylvia Sundquist"[1];

(4) A will dated May 26, 1978 naming Sylvia as executrix, directing the payment of all funeral and estate expenses, and devising the residue of her estate to her three sons and her three daughters.

The testimony received at the hearing in this case implies that Sylvia exercised some influence over her mother with regard to the establishment of the joint account in Great Western and with regard to the execution of the three trust documents and the will on May 26, 1978. There is evidence that, at times, Marie had "second thoughts" after she created the joint account in Great Western. We find no evidence or inference from the evidence that the influence exercised by Sylvia was "undue" or any different than normally would be expected from a daughter or son assisting a parent so as to permit fulfillment of the parent's previously expressed intentions, and none has been pointed out to us.

When Marie died on October 18, 1979, the sum remaining in the joint account at Great Western was $47,718.12, and the sum in the Shoreline Savings Trust was $12,404.99. Sylvia was appointed personal representative and she attended to the delivery to each of the three sons and three daughters a deed to a one-sixth undivided

1. The record contains an explanation that the beneficiary of the Shoreline trust is the granddaughter, not the daughter, of Marie Bendickson. The parties, during post-trial motions, appear to agree. Determination thereof is not necessary for disposition of this case.

interest in the city lot in Garrison. Sylvia's attempts to divide personal effects and household items failed, and ultimately the probate court ordered the sale thereof. Sylvia now holds the $4,500.00 received from the sale. Should that exceed the expenses of the estate, the balance is distributable under Marie's will as residue.

This suit was instituted by Bernard, Marvin, Chris, Delores and Villa on June 14, 1983 by a petition to the probate court to order Sylvia "to make an accounting of all of the property in which ... Marie ... had an interest at the time of her death ...."

After a trial on July 13, 1983, the probate court prepared a memorandum opinion and subsequently signed findings of fact, conclusions of law and order for judgment prepared by counsel. Judgment was entered requiring Sylvia to "return the sum of $60,123.11 to the Estate ... together with all interest ... received on these funds subsequent to November 18, 1979 and all interest at the going rate for any funds that were not drawing interest ...."

The pertinent findings of fact are as follows:

"3) Decedent had no business or investment knowledge.

. . . . .

"5) Sylvia J. Sundquist ... influenced decedent to transfer the funds from the joint tenancy accounts Chrissie Bendickson had created to accounts with ... [Sylvia] as the joint tenant in one account and the beneficiary in the other, as decedent was led to believe ... [Sylvia] would obtain more interest on these accounts.

"6) At this time, decedent was susceptible and easily influenced and had great confidence and trust in ... [Sylvia].

"7) Decedent intended and entrusted her monies in these accounts to ... [Sylvia] for investment purposes only."

The pertinent parts of the conclusions of law provide:

"3) At the time ... [Sylvia] created the accounts in Great Western and Shoreline Savings and Loan, at decedents

direction, an implied trust arose, this trust was confirmed at decedents death.

"4) ... [Sylvia] had the duties and responsibilities of a trustee for these accounts with the children of decedent being the beneficiaries after decedents death.

"5) ... [Sylvia] had the duty and responsibility to place the funds in these accounts into decedents estate at the earliest opportunity after decedents death, including the interest earned on the accounts."

The probate court made no finding of fact and no conclusion of law indicating that "undue" influence was exerted by Sylvia upon Marie at any critical stage in the events that occurred.

In the memorandum opinion the statement is made that:

"The theory of contract in the creation of the accounts wherein Sylvia Sundquist deemed herself especially entitled fails under implied contract. She admits that she performed no unique, unusual or extraordinary services, nor did she expend any monies on behalf of her mother. Nor did she make any showing whatsoever that she assumed any obligation or intent to assume an obligation, in the event her mother's money exceeded her in expiration.

"It fails to meet the requirements of 9–06–04, N.D.C.C., Contract Invalid Unless in Writing and fails to meet the requisites of contract 9–01–02, N.D.C.C., i.e. Sufficient Cause or Consideration."

Sylvia sought amendment of the findings of fact pursuant to Rule 52(b), NDRCivP, and a new trial pursuant to Rule 59(b), NDRCivP. Both were denied and Sylvia appealed from the judgment, from the order denying the motion to amend findings, and from the order denying the motion for a new trial. We reverse the judgment.

Section 30.1–31–04(1), NDCC, provides in part:

"1. Sums remaining on deposit at the death of a party to a joint account

belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created...."

Section 30.1–31–04(3)(b), NDCC, provides in part:

"3. If the account is a trust account:

.    .    .    .    .

b. On death of the sole trustee ... any sums remaining on deposit belong to the persons named as beneficiaries, if surviving ... unless there is clear and convincing evidence of a contrary intent...."

In an ordinary case tried to the court without a jury we review findings of fact under the standard specified in Rule 52(a), NDRCivP. Since the above quoted statutes require "clear and convincing" evidence to overcome the statutorily expressed presumption, Rule 52(a) has a very limited application in the instant case. Where the judging of credibility of witnesses is involved, we still acknowledge the advantage of the trial judge. See *Zundel v. Zundel*, 278 N.W.2d 123, 130 (N.D.1979). And, as we have often said, findings which are induced by an erroneous view of the applicable law are clearly erroneous, *e.g.*, *Winter v. Winter*, 338 N.W.2d 819, 822 (N.D.1983).

■ The trial court's memorandum opinion discloses that the findings of fact here were induced by the erroneous view that the law of contracts imposed some burden on Sylvia to show consideration or entitlement to the sums remaining in the Great Western joint account and the Shoreline trust. Clearly, Sylvia was entitled to rely on the presumption provided in § 30.1–31–04(1), NDCC, that she was the surviving owner of the Great Western account. Marie's grandaughter (also named Sylvia) is similarly entitled to rely on the presumption provided in § 30.1–31–04(3)(b), NDCC, that she was the surviving beneficiary-owner of the Shoreline trust.

We conclude that findings of fact 3, 5, 6 and 7 are all either clearly erroneous or surplusage. There was no evidence, let alone any clear and convincing evidence, that Marie had no business or investment knowledge. It is not material that Sylvia influenced her mother so long as such was not "undue" influence. The evidence is not clear and convincing that Marie was susceptible and easily influenced and had great confidence in Sylvia. Substantial testimony supported the opposite conclusions.

■ Conclusions of law 3, 4 and 5 are not supported by findings of fact which can be upheld under any theory of appellate review. The petition in this case appears to have been treated correctly as seeking to establish a constructive, resulting or implied trust. Parties asserting a constructive trust bear the burden of proving the existence of the trust by clear and convincing evidence and, in addition, the evidence must be strong enough to support only one conclusion. See *Weigel v. Rippley*, 283 N.W.2d 123 (N.D.1979); *Zundel v. Zundel*, *supra* ; Chapter 59–01, NDCC. When the statute requires clear and convincing evidence to establish a constructive trust, a trust will not be upheld "if the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust." *Bodding v. Herman*, 76 N.D. 324, 35 N.W.2d 561, 563 (1949). See also *Weigel v. Rippley*, *supra*, and *Zundel v. Zundel*, *supra*. Section 30.1–31–04, NDCC, provides Sylvia with sufficient "reasonable explanation" and there is no need for further evidence.

■ Our opinion in *Matter of Estate of Mehus*, 278 N.W.2d 625 (N.D.1979), is cited as support for the contention that a presumption of undue influence applies to Sylvia because of her alleged "fiduciary" position. A daughter who assists and advises her mother is not, without more, considered a fiduciary under Chapter 59–01, NDCC. The case of *Matter of Estate of Mehus*, *supra*, is clearly distinguishable. It would be clearly contrary to public policy to force a parent to consult a stranger in order to avoid penalizing sons or daughters.

The judgment is reversed. Sylvia is entitled to costs on appeal.

ERICKSTAD, C.J., and GIERKE, SAND and VANDE WALLE, JJ., concur.