Oscar I. PAULSON, individually and as Personal Representative of the Estate of June R. Paulson, deceased, Plaintiff and Appellant,

v.

Arthur MEINKE and Ellenora Meinke, as Personal Representatives of the Estate of Claire Paulson, Defendants and Appellees.

Civ. No. 11082.

Supreme Court of North Dakota.

June 19, 1986.

Leland F. Hagen, of Lee Hagen Law Office, Ltd., Fargo, for plaintiff and appellant.

Lee W. Mosher, Golden Valley, Minn. (argued), and Gerald W. Jukkala, of Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for defendants and appellees.

MESCHKE, Justice.

In well-traveled litigation, we partially reverse the third trial judge's decision. We order an implied trust where unjust enrich-

ment results from transfer of a 295 acre farm and new home to the claimant's brother, now deceased, who only assumed a mortgage balance and who agreed to an "option to repurchase."

In 1981, Oscar and June Paulson sought an implied trust against land in both LaMoure and Ransom Counties which they had deeded to Oscar's brother, Claire, in 1977. After the first trial before Judge Fredricks, who rejected their claim, Paulsons moved for a new trial or judgment. Because Judge Fredricks had retired, Judge Hoberg acted, amended the findings and conclusions, and imposed a constructive trust on the land in LaMoure County. On appeal, this court held that a successor judge, who had not heard or seen the witnesses, could order a new trial but not a new judgment. Therefore, this court reversed and remanded for a new trial before a different judge. *Paulson v. Meinke,* 352 N.W.2d 191 (N.D. 1984).

Following a second trial, Judge Eckert denied Oscar and June any recovery. Oscar appeals, for himself and as personal representative of the estate of June (who has died since this action was commenced), contending that certain findings were clearly erroneous and that Oscar was entitled to judgment as a matter of law. We affirm in part, reverse in part, and remand with instructions for a constructive trust on part of the land and an accounting as to that land.

We summarize the facts from lengthy findings made by the trial court. Evidence not recognized in the findings, but referred to in this summary, is noted parenthetically.

Oscar and Claire were brothers who had acquired land together and farmed together since 1958 under varying arrangements. In the mid 70's, Oscar and June had short crops and experienced financial difficulties. In two stages in 1977, they deeded all of their land to Claire.

In March, 1977, Claire paid an overdue mortgage payment of $4,593 to the Federal Land Bank for Oscar and June, who then conveyed their Ransom County quarter to Claire.

Thereafter in 1977, Oscar and June sought and obtained a release from the Federal Land Bank mortgage of the Ransom County quarter and of an eighty acre tract in LaMoure County for the stated purpose of selling the quarter to Claire for $37,000 and the eighty to another person for $30,000. At the closing, in July and August, 1977, $25,548 paid by Claire and the $30,000 received from the sale of the eighty were applied to pay debts of Oscar and June, (including $4,900 paid to the Federal Land Bank as an advance payment on Oscar and June's mortgage on their remaining land). $7,000 that Oscar owed Claire was cancelled. Oscar also received $1,350 from Claire on July 11, 1977.

At the closing, not only was the Ransom County quarter deeded to Claire, but also all of the remaining 295 acres of LaMoure County land, consisting of 216.5 crop acres, 84.5 acres of pasture, and a recently built home, was deeded to Claire. Claire agreed to assume and pay the mortgage to the Federal Land Bank, (which, after application of the $4,900 advance payment out of the sales proceeds, had a remaining balance of only $27,000.) Contemporaneous Federal Land Bank records stated, about the transfer of the home and remaining acreage in LaMoure County from Oscar and June to Claire:

"The reason that there is a good deal made between buyer and seller on the home place is that Oscar Paulson will be renting the farm from Claire with the option to purchase the unit back if progres is shown."

(Oscar and June testified that there was an oral understanding that they had "the right to repurchase the land." The personal representative of Claire's estate, Mrs. Meinke admitted: "[Claire] told me that if Oscar gets the money he could buy it back.")

Oscar retained his farm machinery. Oscar got the 1977 crop from the land transferred to Claire, as well as a share of crop from land that he farmed for Claire. Oscar again farmed the same land in 1978 and

also himself made a partial payment on the Federal Land Bank mortgage.

In 1979, Oscar arranged with David Bruse to farm all of the LaMoure County land. The written lease named both Claire and Oscar as lessors, and provided for a one-third crop share to the lessors. Oscar signed the lease for himself and June signed Claire's name to the lease. However, at Claire's insistence, all of the grain was marketed in Claire's name. Oscar did not get an accounting from either Bruse or Claire, and received only $500 from Claire during 1979.

Oscar rented the pasture land in LaMoure County to a third person in 1979 and 1980 keeping the cash rents received.

In 1980, Claire rented the farmland to a different neighbor, over Oscar's protests, and Claire kept the crop share rents. Claire did not respond to Oscar's requests about income and expenses.

During 1978, 1979, and 1980, Oscar received seven different checks from Claire totalling less than $4,000. None of these amounts were reported by Oscar as income on his tax returns.

Oscar and June reported the sale of one quarter to Claire in their 1977 income tax return, for a sale price of $25,000, but did not report any of the LaMoure County land as sold. Just before Claire died, Oscar and June filed petitions in bankruptcy on October 16, 1980, but did not show any interest in the LaMoure County land as an asset.

Claire, who had experienced an initial heart attack in late 1979, died on November 24, 1980. His testamentary beneficiaries are a son and a cousin. The parents of the cousin are the personal representatives of his estate.

From these findings, the trial court concluded that "there is not sufficient evidence to conclude that there was a legal and binding agreement by Claire to sell the real estate in question back to Oscar and June;" that Oscar and June "failed to establish" a constructive trust or "who the beneficiaries of that trust would be;" that "it would be inequitable" to impose a trust because Os-

car and June "executed the deeds in order to avoid the lawful claims of their creditors ..." because they went "through bankruptcy without listing as an asset their claims to the land ...;" and that "it would now be inequitable to let [them] prevail against the estate of Claire at a time when he is no longer living and able to protect his rights."

■ There are two types of implied trust under North Dakota law: resulting and constructive. *Weigel v. Rippley*, 283 N.W.2d 123 (N.D.1979); *Bodding v. Herman*, 76 N.D. 324, 35 N.W.2d 561 (1948). A resulting trust stems from "acts or expressions of the parties [that] indicate an intent that a trust relation resulted from their transaction." *Loberg v. Alford*, 372 N.W.2d 912, 915 (N.D.1985); *Zundel v. Zundel*, 278 N.W.2d 123, 128 (N.D.1979). Such a trust attempts to give a vague or incomplete agreement the substance that was originally intended by the parties. A constructive trust, however, is independent of any agreement between the parties (although the existence of some agreement may serve as a factor in determining whether to impose a constructive trust) and instead stems from the equitable powers of the court:

"Under our statutory scheme, a constructive trust may be imposed by the courts in order to do equity and prevent unjust enrichment when title to property is acquired by fraud, duress, undue influence, or is acquired or retained in violation of a fiduciary duty or confidential relationship. See *Weigel v. Rippley*, 283 N.W.2d 123 (N.D.1979); *Wildfang-Miller Motors, Inc. v. Miller*, [186 N.W.2d 581 (N.D. 1971)]. The party seeking imposition of a constructive trust bears the burden of proving the existence of the trust by clear and convincing evidence. *Matter of Estate of Bendickson*, 353 N.W.2d 320 (N.D.1984); *McCarney v. Knudsen*, 342 N.W.2d 380 (N.D.1983); *Weigel v. Rippley, supra.*" *Radspinner v. Charlesworth*, 369 N.W.2d 109, 114 (N.D.1985).

■ It is not clear whether this case was tried under a resulting-trust theory, a con-

structive-trust theory, or both. It is clear, however, that the lower court approached the matter as if a legal and binding agreement between Oscar and Claire was required and that the trial court did not focus its findings on essential elements of a constructive trust: unjust enrichment and a confidential relationship. We conclude that, in those respects, the trial court's decision was premised upon erroneous conceptions of the law of implied trusts. See *Schnell v. Schnell*, 346 N.W.2d 713 (N.D. 1984). "And, as we have often said, findings which are induced by an erroneous view of the applicable law are clearly erroneous." *Matter of Estate of Bendickson*, 353 N.W.2d 320, 323 (N.D.1984).

■ The trial court misconceived the need for a binding agreement, failed to address whether there was unjust enrichment to Claire, and failed to determine whether there was a confidential relationship between Oscar and Claire. The findings made by the trial court clearly lead to conclusions favorable to Oscar and June on each of the elements which are the essential ingredients of a constructive trust. In addition, the trial court ignored an important underlying fact which was not contradicted: Oscar and June continued to reside in their new home on the land until Claire's death, rent free.

1) *Unjust Enrichment:* The findings sketch financial aspects of the transaction, but do not address whether there was unjust enrichment. Finding 34 says Claire assumed the balance of the $32,000 Federal Land Bank mortgage (although the evidence discloses that only $27,000 was due when assumed) for the transfer of the 295 acres of land in LaMoure County. Thus, it appears that Claire obtained title to approximately 295 acres of land from Oscar by assuming a mortgage balance of only $27,-000. Finding 57 determines that the value of the 295 acres at the time of transfer was over $84,000.[1] Thus, Claire (or, now, his

heirs) obtained the LaMoure County land for less than one-third of its value, or an apparent windfall of nearly $60,000. Absent a finding of an appropriate purpose to benefit Claire, that is clearly unjust enrichment. We conclude that the findings do not exclude unjust enrichment, but rather demonstrate it as to the 295 acres. This is in contrast to the specific finding as to the Ransom County quarter: "The sale price was not at such a discount as would indicate that Oscar and June were taken advantage of."

2) *Confidential Relationship:* Although the findings recognize that Claire was Oscar's brother and that they had farmed together under various arrangements, the findings do not determine whether it was a "confidential relationship," one of the more common elements for a constructive trust where there is no claim of fraud, duress, undue influence, mistake, or breach of fiduciary duty. "A confidential relation may exist although there is no fiduciary relation; it is particularly likely to exist where there is a family relationship. . . ." 1 Restatement (Second) of Trusts § 2, comment b (1957). Also:

> "It would seem, indeed, that wherever the transferee orally agrees to hold the property transferred to him in trust for the transferor there is a sufficient relation of confidence thereby created to justify imposing a constructive trust upon him if he breaks his promise; . . ." 1 Restatement (Second) of Trusts § 44, comment 1 b (1957).

We conclude that the findings made do not negative a confidential relationship, but rather demonstrate it.

In addition, Oscar and June continued to reside in the new home on the land until Claire's death. They did not pay rent to do so (although rent was demanded by the estate after Claire's death). The trial court's findings recognized that their home

---

1. The findings do not explain how this value was arrived at. The only direct evidence of value was an expert appraisal introduced by Oscar which valued the land transferred to Claire in 1977, at a total of $152,000, of which

$110,700 was for the 295 acres of LaMoure County land. Finding 73 stated: "[t]he land transferred to Claire was valued in the estate tax returns (as of November 1980) by the defendants at $123,406.92."

was relatively new, having been built by them in 1974 and financed with the Federal Land Bank mortgage for $32,000. This uncontradicted evidence of continued rent free residence, not otherwise explained, is clear and convincing evidence that accentuates the ultimate findings of unjust enrichment and confidential relationship which compel the implication of a trust.

To summarize: The transfer was made for substantially less than current values, a classic constructive trust circumstance. See 2 Restatement (Second) of Trusts § 423, comments c and d (1957). The transfer was between brothers who had together engaged in farming enterprises, a common "confidential relationship." Oscar and June continued to reside in their new home, without payment of rent.[2]

These essential circumstances, which inhere in the findings, compel implication of a trust relationship. When these circumstances are considered with the admissions as to an agreement to repurchase ("option to purchase the unit back"), a breach of the confidential relationship is evident. Therefore, we conclude that a mistake was made by the trial court while proceeding under erroneous conceptions as to the law of implied trusts.

We cannot credit the trial court's finding that Claire's oral representation "does not rise to the level of a contract," nor its legal conclusion that "there is not sufficient evidence to conclude that there was a legal and binding agreement by Claire to sell the real estate in question back to Oscar and June." By definition, an implied trust does not require a complete and binding agreement. *Farmer's State Bank of Gladstone v. Anton*, 51 N.D. 202, 199 N.W. 582 (1924). An implied trust is often required to give a vague or incomplete agreement the substance that was originally intended by the parties.

The trial court found that a purpose of the transfer was "to avoid the claims of Oscar's and June's creditors" because Oscar and June went through bankruptcy over three years later without showing their interest in the land held by Claire as an asset. While the defense of illegality, including a conveyance to hinder, delay or defraud creditors, can defeat an implied trust under appropriate circumstances, see Restatement (Second) of Trusts §§ 63, 422, and 444 (1957), the policy against unjust enrichment outweighs that consideration where there are doubtful circumstances about the claim of fraud on creditors. *Wantulok v. Wantulok*, 67 Wyo. 22, 214 P.2d 477 (1950); *Thomasi v. Koch*, 660 P.2d 806 (Wyo.1983).

Here, illegality was not pleaded as an affirmative defense as Rule 8(c), N.D.R. Civ.P., requires. There is no claim that Claire was defrauded in any way. Indeed, he was repaid, as were nearly all creditors, from the sale proceeds marshalled at the closing in mid 1977. All proceeds went to creditors.

The findings do not identify any creditors in existence at the time of the transfer who were discharged by the bankruptcy proceedings over three years later. No creditor is here complaining. And, having not been injured by the claimed wrongfulness of the transfer, neither Claire nor his heirs should be able to invoke illegality or any comparable doctrine of "clean hands." *Jacobsen v. Pedersen*, 190 N.W.2d 1, 4 (N.D. 1971).

▮ The trial court seemed to conclude that Oscar and June should be barred for asserting their claim against Claire because they delayed doing so during the year that Claire had health problems and until after he died. We perceive no basis in estoppel or laches from which such a barrier can be fairly inferred. In affirming a constructive trust, we rejected comparable arguments in *Loberg v. Alford*, 372 N.W.2d 912, 919 (N.D.1985). Death of an adverse party

---

**2.** Without any corresponding finding by the trial court, appellee's counsel suggests that "Oscar and June probably expected Claire to allow them free rent as long as Claire lived." Since both Claire and June are deceased, this suggests a design to evict Oscar from the home. It underscores the point that equitable relief should have been formulated by the trial court.

does not, by itself, create an estoppel, nor elevate a delay into laches.

On the entire record, we are left with the definite and firm conviction that a mistake has been committed. A trust should be implied for return of the 295 acres in LaMoure County, including the new home built by Oscar and June, upon payment to Claire's estate for the balance of the mortgage assumed by Claire, either in cash or by assumption of any remaining mortgage, or both. We remand with directions to the trial court to imply the trust, to shape appropriate relief, and to require an accounting. *Zundel v. Zundel*, 278 N.W.2d 123 (N.D.1979).

In the accounting, appropriate adjustments should be made in favor of Claire's estate for all amounts paid by Claire or his estate which benefitted Oscar and June, including interest on the mortgage, real estate taxes, insurance on the house, repairs or improvements, if any, and like items, as well as any payments made directly to Oscar and June subsequent to the transfer of the LaMoure County land. All net crop proceeds and rentals, after actual and reasonable crop production expenses or shares, as well as any other income received by Claire or his estate from the 295 acres (which excludes the Ransom County quarter) should be credited in favor of Oscar. Interest at the actual rate or rates paid to the Federal Land Bank on the mortgage on the land should be computed on any credit balances in favor of either party from time to time during the period of accounting.

█ We affirm the trial court in so far as it determined that no implied trust would be applied to the quarter in Ransom County. As to the 295 acres in LaMoure County, we reverse and remand with directions to imply a constructive trust and for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, Justice, dissenting.

I respectfully dissent. Under the guise of "erroneous conceptions of the law of implied trusts," the majority has undertaken to retry this case. Although the theory of constructive trust is an equitable theory, it does not allow this court to retry the case to achieve what we believe to be an equitable result. As the majority opinion notes, but fails to apply, the party seeking imposition of a constructive trust bears the burden of proving the existence of the trust by clear and convincing evidence. This case has now been determined four times, twice by judges who observed the witnesses and came to the conclusion that there was not the clear and convincing evidence necessary to establish an implied trust. In both instances, including the majority opinion, in which it has been determined that there is clear and convincing evidence to establish an implied trust, that result has been established from the "cold record." So much for Rule 52(a), N.D.R. Civ.P. Lest it be argued that much of the testimony was by deposition, and that we are as able to read those depositions as is the trial court, I note that we no longer follow that theory. Rather, "A choice between two permissible views of the evidence is not clearly erroneous when the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations. [Citation omitted.] Prior decisions of this Court to the contrary are to be disregarded." See comments to Rule 52(a), N.D.R.Civ.P., effective March 1, 1986.

The trial court made detailed findings, 82 to be exact. I do not intend to attempt to review all the evidence, or lack thereof, which obviously influenced the trial court to reach the decision it did. Some matters require further discussion, however.

It appears that the majority in its haste to reach what it considers to be an equitable result has drawn the best possible inferences from the evidence adduced. That is not, of course, the function of this court. Rather, we are to review the record

to determine whether or not there is clear and convincing evidence to support an implied trust; we are not to construe the evidence in the light most favorable to the establishment of an implied trust, and then review our inferences to determine whether or not there is clear and convincing evidence. As an example, the majority is enamored of the fact (not found by the trial court but apparently undisputed) that Oscar and June continued to live in the new home on the land until Claire's death. The majority assumes that this is somehow inconsistent with the conveyance to Claire. That is the favorable inference which the majority draws from that fact. On the other hand, Claire lived in St. Paul; empty farm homes are not a rarity in North Dakota and it appears not at all unlikely that Claire, because he had no use for the farm home, would wish someone to live in the home to protect it from vandals. Furthermore, as the trial court found:

"Claire had a pattern of assisting Oscar financially before the transfer of the real estate to him by Oscar and June. Payments made by Claire to Oscar and June after the transfer of the real estate were consistent with his prior conduct."

If we are to draw inferences, it would seem as likely that Claire intended to continue to allow Oscar and June to reside in a house for which he had no use and which could quickly deteriorate if left empty as that their continued occupancy of the house is somehow contrary to their intent to convey the property.

As a further example, the opinion ignores the findings that after Oscar and June signed the deeds conveying the land to Claire in 1977, Claire refused to respond to Oscar's requests on income and expenses until the time of his death in 1980; that Claire had a heart attack in 1979; and that Oscar knew of Claire's health condition after his heart attack. The inferences to be drawn from those findings are, of course, that Oscar and June waited until after Claire's death, when he could no longer refute their claims, to challenge their conveyance of the property to Claire.

Claire was unmarried and had no one close to testify in his behalf.

Finally, the majority opinion ignores the finding of the trial court that:

"The basic purpose and reason for the transfer of the land in LaMoure and Ransom County by Oscar and June to Claire was to avoid the claims of Oscar's and June's creditors. They were fearful that they would lose everything and had a desire to keep the land 'in the family.'"

The majority, although recognizing that it is not clear whether this case was tried under a resulting-trust theory or a constructive-trust theory, or both, contends that the lower court approached the matter as if a legal and binding agreement between Oscar and Claire was required and that the trial court did not focus its finding on essential elements of a constructive trust. Those statements seem inconsistent, for if the case was not tried on a constructive-trust theory, there is no obligation of the trial court to focus on a constructive trust. It was not clear, even at oral argument, whether Oscar was urging a resulting trust, a constructive trust, or both. To chastise the trial court for not "focusing" on elements of a constructive trust thus seems unwarranted. Oscar bore the burden of proving the existence of a constructive trust by clear and convincing evidence. "[U]nder the clear and convincing evidence standard, the evidence must be such that the trier of fact is reasonably satisfied with the facts the evidence tends to prove as to be led to a firm belief or conviction." *Zundel v. Zundel*, 278 N.W.2d 123, 130 (N.D. 1979). When the trial court does not find, by clear and convincing evidence, the existence of a constructive trust, and the record contains substantial evidence sustaining that decision, this court should not substitute its judgment for that of the trial court. See *Zundel, supra; Kadrmas v. Kadrmas*, 264 N.W.2d 892 (N.D.1978).

In support of its position that an implied trust does not require a complete and binding agreement, the majority cites *Farmers' State Bank of Gladstone v. Anton*, 51 N.D. 202, 199 N.W. 582 (1924), but that

case only held that an agreement to extend the time to redeem is not rendered unenforceable merely because it rests in parol nor because no time within which redemption must be made is specified in the agreement. But the evidence in that case did indicate that the agreement permitting the defendants to redeem was to be for the sum paid by the plaintiff with interest at 8 percent. Here, no terms of repurchase have been introduced in evidence. The more than one page of directions in the majority opinion supplying some of the terms to be used on remand is simply indicative of the fact that there was no agreement between Claire and Oscar and June to repurchase.

As a matter of personal preference I like the result reached by the majority opinion. Claire is dead and has no one apparently dependent upon him. His beneficiaries are a natural son, adopted by a married couple, and a cousin. At the time of Claire's death Oscar and June were both living and the land had been theirs. Were I permitted to choose on the basis of heart rather than mind I would join the majority opinion. Because we are not to so indulge ourselves I must dissent.